EAGLE FIRE COMPANY OF NEW YORK V. GLOBE
LOAN & TRUST COMPANY.

FILED APRIL 3, 1895.　No. 5973.

1. Insurance: ADDITIONAL INSURANCE: WAIVER OF TERMS OF
POLICY. An insurance contract provided: "This policy, unless
otherwise provided by agreement indorsed hereon, shall be void
if the insured shall hereafter procure any other insurance on the
property covered by this policy." The insured procured addi-
tional insurance on the insured property. In a suit upon the
first policy the first insurer interposed the defense that the policy
was not in force at the date of the loss because the insured had
procured additional insurance contrary to the above provision of
the policy. The insured admitted the procuring of the addi-
tional insurance, but pleaded in avoidance of the defense that
the insurance company had waived its right to forfeit the policy
by reason thereof in this: (1) That the insurance company knew
of the additional insurance prior to the loss, and by neglecting
to cancel the policy in suit, by reason thereof it thereby waived
its right to forfeit the policy and elected to carry the risk not-
withstanding the additional insurance; (2) that after the loss
occurred the insurer, with full knowledge of the additional in-
surance, submitted the amount of the loss sustained by the in-
sured to arbitration, the insured and insurer paying the expenses
thereof; (3) that after the arbitration the insurer canceled the
policy, the cancellation taking effect from and after the day of
the date of the loss, and repaid to the insured the unearned
premium for carrying the risk from the day after the date of the
loss until the expiration of the policy by its terms. *Held*, (1)
That the provision in the insurance policy prohibiting additional
insurance on the insured property was inserted therein for the
benefit of, and might be waived by, the insurer; (2) that the
violation of the policy by the insured in procuring additional
insurance on the insured property without the knowledge or
consent of the first insurer did not render the policy issued by
it void, but voidable only at the election of such first insurer
(*Hughes v. Ins. Co. of North America*, 40 Neb., 626, followed);
(3) that the evidence set out in the opinion does not establish
that the insurance company knew of the additional insurance
prior to the date of the loss sued for; (4) that the conduct of
the insurance company after the loss, and with actual knowledge
of the additional insurance, in submitting the amount of the

loss to arbitration and in canceling the policy and repaying the unearned premium, sustains the finding of the jury that the insurance company by such conduct elected to and did waive its right to cancel the policy by reason of such additional insurance.

2. ———: KNOWLEDGE OF AGENT.  Knowledge on the part of the agent of an insurance company authorized to issue its policies, of facts which render the contract voidable at the insurer's option, is knowledge of the company.  *Gans v. St. Paul & Marine Ins. Co.*, 43 Wis., 108, followed.  *German Ins. Co. v. Heiduk*, 30 Neb., 288, distinguished.

3. ———: NOTICE OF ADDITIONAL INSURANCE.  The statement of an insured to the agent of the insurance company carrying the risk that the former intends to take out additional insurance on the insured property is not notice to such agent or his principal of the existence of such additional insurance when taken out by the insured.

4. Review: ASSIGNMENT OF ERROR.  An assignment of error in this court that the district court erred in admitting the evidence of a certain witness will be overruled if any of the evidence given by the witness was competent.

ERROR from the district court of Douglas county.  Tried below before DOANE, J.

The opinion contains a statement of the case.

*Jacob Fawcett*, for plaintiff in error:

Where a policy of insurance contains a stipulation that if the assured shall have or shall subsequently obtain additional insurance upon property insured, without the consent of the company indorsed in writing on the policy, the same shall be void, said stipulation is material, and lawful, and will be upheld. (*Herman Ins. Co. v. Heiduk*, 30 Neb., 288; *Zinck v. Phœnix Ins. Co.*, 60 Ia., 266; *Sugg v. Hartford Fire Ins. Co.*, 98 N. Car., 143; *Phenix Ins. Co. v. Lamar*, 106 Ind., 513; *Continental Ins. Co. v. Hulman*, 92 Ill., 145; *Phœnix Ins. Co. v. Michigan S. & N. I. R. Co.*, 28 O. St., 69.)

Where the policy provides that its conditions shall only

be waived by the written or printed consent of the Com-
pany indorsed upon the policy, the local agent cannot bind
the company by an oral waiver of such conditions. (*German
Ins. Co. v. Heiduk*, 30 Neb., 288; *Kroeger v. Birmingham
Fire Ins. Co.*, 83 Pa. St., 264; *Beebe v. Equitable Mutual
Life & Endowment Association*, 40 N. W. Rep. [Ia.], 122;
*Walsh v. Hartford Fire Ins. Co.*, 7 Ins. L. J. [N. Y.], 423;
*Smith v. Niagara Fire Ins. Co.*, 15 Atl. Rep. [Vt.], 353;
*Enos v. Sun Ins. Co.*, 8 Pac. Rep. [Cal.], 379; *Catoir v.
American Life Ins. & Trust Co.*, 33 N. J. Law, 492;
*Weidert v. State Ins. Co.*, 19 Ore., 261; *Messelback v. Sun
Fire Ins. Co.*, 26 N. E. Rep. [N. Y.], 34; *Gould v. Dwell-
ing House Ins. Co.*, 51 N. W. Rep. [Mich.], 455; *Dircks
v. German Ins. Co.*, 34 Mo. App., 44.)

An insurance company, as well as an individual, may
limit and restrict the powers of its agent. When such re-
striction is known to the person dealing with the agent, the
company is only bound by the acts of the agent performed
within the scope of the authority conferred. (*German Ins.
Co. v. Heiduk*, 30 Neb., 288.)

And the holder of the policy is estopped, by accepting
the policy, from setting up or relying upon powers of the
agent in opposition to the limitations and restrictions in the
policy. (*Weidert v. State Ins. Co.*, 19 Ore., 261; *Smith v.
Niagara Fire Ins. Co.*, 15 Atl. Rep. [Vt.], 353; *Catoir v.
American Life Ins. & Trust Co.*, 33 N. J. Law, 492.)

Where the contract between the parties is that an ap-
praisal for the sole purpose of determining the amount of
loss may be had upon request of either party, and that the
expenses thereof shall be borne equally, and the agreement
to appraise expressly stipulates that such submission shall
not be taken as a waiver on the part of the company as to
the conditions of the policy, there is no room for claiming a
waiver on the part of the company. (*Hill v. London As-
surance Corporation*, 9 N. Y. Sup., 502; *Whipple v. North
British & Mercantile Fire Ins. Co.*, 11 R. I., 139; *Jewett*

*v. Home Ins. Co.*, 29 Ia., 562; *Johnson v. American Fire Ins. Co.*, 43 N. W. Rep. [Minn.], 59; *Boyd v. Vanderbilt Ins. Co.*, 16 S. W. Rep. [Tenn.], 471; *Englehardt v. Young*, 86 Ala., 535; *Briggs v. Fireman's Ins. Co.*, 65 Mich., 58.)

Where the mortgagee, to secure his interest in the mortgaged premises, takes out a policy of insurance thereon, running to the mortgagor, containing a stipulation against other insurance, the policy is defeated by unauthorized insurance obtained on the property by the mortgagor. (*Hale v. Mechanics Mutual Fire Ins. Co.*, 6 Gray [Mass.], 169; *Grosvenor v. Atlantic Fire Ins. Co.*, 17 N. Y., 391; *State Mutual Fire Ins. Co. v. Roberts*, 31 Pa. Sta., 438; *Pupke v. Resolute Fire Ins. Co.*, 17 Wis. 389; *Lawrence v. Holyoke Ins. Co.*, 11 Allen [Mass.], 387; *Fix v. Illinois Mutual Fire Ins. Co.*, 53 Ill., 151; *Carpenter v. Providence Washington Ins. Co.*, 16 Pet. [U. S.], 495.)

A statement of the insured to the agent of the company that the former intended to obtain additional insurance cannot be made the basis of a waiver of the condition of the policy which requires consent for other insurance to be indorsed on the policy. (*Kroeger v. Birmingham Fire Ins. Co.*, 83 Pa. St., 264; *Beebe v. Equitable Mutual Life & Endowment Association*, 40 N. W. Rep. [Ia.], 122; *Walsh v. Hartford Fire Ins. Co.*, 73 N. Y, 5; *Gladding v. Insurance Associations*, 13 Ins. L. J. [Cal.], 893; *Kyte v. Commercial Assurance Co.*, 10 N. E. Rep. [Mass], 518; *Lohnes v. Ins. Co. of North America*, 6 Ins. L. J. [Mass.], 472; *Bush v. Westchester Fire Ins. Co.*, 5 Ins. L. J. [N. Y.], 207; *Bowlin v. Hekla Fire Ins. Co.*, 16 Ins. L. J. [Minn.], 305; *Enos v. Sun Ins. Co.*, 8 Pac. Rep. [Cal.], 379; *Catoir v. American Life Ins. Co.*, 33 N. J. Law, 492; *Crane v. City Ins. Co. of Pittsburg*, 2 Flip. [U. S.], 576; *Barnes v. Continental Ins. Co.*, 30 Mo. App., 539; *Dircks v. German Ins. Co.*, 34 Mo. App., 44; *Weidert v. State Ins. Co.*, 19 Ore., 261; *Messelbach v. Sun Fire Ins. Co.*, 26 N. E. Rep.

[N. Y.], 34; *Gould v. Dwelling House Ins. Co.*, 51 N. W. Rep. [Mich.], 455; *Cleaver v. Traders Ins. Co.*, 65 Mich., 527; *Marvin v. Universal Life Ins. Co.*, 85 N. Y., 278; *Forbes v. Agawam Mutual Fire Ins. Co.*, 9 Cush. [Mass.], 470; *Worcester Bank v. Hartford Fire Ins. Co.*, 11 Cush. [Mass.], 265; *Hale v. Mechanics Mutual Fire Ins. Co.*, 6 Gray [Mass.], 169; *Smith v. Niagara Fire Ins. Co.*, 15 Atl. Rep. [Vt.], 353; *Loring v. Manufacturers Ins. Co.*, 8 Gray [Mass.], 28; *Grosvenor v. Atlantic Fire Ins. Co.*, 17 N. Y., 391; *State Mutual Fire Ins. Co. v. Roberts*, 31 Pa. St., 438; *Pupke v. Resolute Fire Ins. Co.*, 17 Wis., 389; *Lawrence v. Holyoke Ins. Co.*, 11 Allen [Mass.], 387; *Chishom v. Provincial Ins. Co.*, 20 U. C. C. P., 11; *Fix v. Illinois Mutual Fire Ins. Co.*, 53 Ill., 151; *Carpenter v. Providence Washington Ins. Co.*, 16 Pet. [U. S.], 495; *Buffalo Steam Engine Works v. Sun Mutual Ins. Co.*, 17 N. Y., 401; *Gillett v. Liverpool, L. & G. Ins. Co.*, 41 N. W. Rep. [Wis.], 78.)

*Frank T. Ransom* and *Howard B. Smith, contra:*

The insurance company waived the forfeiture after it learned of the loss, and after it had full knowledge of all the facts as to the loss and additional insurance. (1 Wood, Fire Insurance, p. 286, sec. 109; *Ins. Co. of North America v. McLimans*, 28 Neb., 659; *Dwelling House Ins. Co. v. Weikel*, 33 Neb., 668.)

RAGAN, C.

This is a suit brought in the district court of Douglas county against the Eagle Fire Company (hereinafter called the "Insurance Company") upon an ordinary policy of fire insurance issued by the Insurance Company to one Ida W. Brown, insuring certain property of hers against loss or damage by fire from noon of the 13th day of March, 1890, to noon of the 13th day of March 1895. The suit is brought by Henry G. Hubbard, Mrs. Brown's assignee.

Pending the action Hubbard died, and the suit was revived in the name of his executors. The connection of the Globe Loan & Trust Company with the case need not be stated. Hubbard's executors had a verdict and judgment and the Insurance Company has prosecuted to this court a petition in error. In our examination of the case we shall not confine ourselves to a consideration of the errors assigned in the order of their assignment but consider them under the following heads:

1. That the verdict is not sustained by sufficient evidence. The policy sued upon contains this provision: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy." As a defense to the action the Insurance Company pleaded that after the issuance of the policy in suit, and without its consent indorsed in writing on the policy, Mrs. Brown procured additional insurance on the insured property. Hubbard's executors by their reply to this defense admitted that Mrs. Brown procured additional insurance on the insured property without the consent of the Insurance Company having been first indorsed in writing on the policy in suit, but pleaded in avoidance of the defense that the company had waived Mrs. Brown's violation of the policy in that respect in this: That prior to the loss the company had notice of the procuring of such additional insurance and failed to exercise its right to cancel the policy by reason of such additional insurance and thereby elected to carry the risk notwithstanding such additional insurance; that after the loss occurred the Insurance Company, with full knowledge of the existence of the additional insurance in pursuance of an agreement with Mrs. Brown, submitted the amount of the loss or damage sustained by Mrs. Brown by reason of the destruction of the insured

property by fire to arbitration, the insured and the insurer-
paying the expenses of such arbitration; that the loss oc-
curred on the 9th day of November, 1890, and on the
24th of November, 1890, after arbitration of the amount
of the loss, the company elected to and did cancel its policy,.
such cancellation taking effect only from and after the day
of the date of the loss, and repaid to the insured the un-
earned premium for carrying the risk from the day after
the date of the loss until the expiration of the policy by
its terms.

The evidence is undisputed that the company canceled
the policy on the 24th of November, 1890, and repaid to
Mrs. Brown the unearned premium and took from her a
receipt of that date in words and figures as follows: "Re-
ceived of the Eagle Fire Company twenty-nine dollars, re-
turn premium on policy number 474, in consideration of
which said policy is canceled. Said cancellation dates from
November 9th, 1890, subject however to claim for loss up
to and including November 9th, 1890." The evidence is
also undisputed that after the loss had occurred that the
Insurance Company, with knowledge of the fact that Mrs.
Brown had procured additional insurance upon the property
subsequent to the date of the policy in suit, submitted the
amount of the loss or damage to the insured property to
arbitration. The evidence as to the knowledge or notice
which the Insurance Company had of the additional insur-
ance prior to the loss is contained in the following testi-
mony given by Brown, the husband of the insured:

Q. After  *  *  *  this insurance had been taken out
that is being sued on here did you visit Ringwalt Bros.,
agents for the Eagle Company, for the purpose of taking
out further insurance?

A. I did; yes, sir.

Q. Who did you find in the office?

A. Mr. Ringwalt, the same that is sitting right near the
desk in the court room.

Q. At the present time?

A. Yes, sir.

Q. What transpired between you and Mr. Ringwalt?

A. I told Mr. Ringwalt that I was going to take out some more insurance. I asked him to give me a list of the insurance, as Mr. Devries had changed the amount of the policies. I was not sure about the amount. He said all right, and he went and got some large book from a book-case and he put it down with a lead pencil.

Q. Who put it down?

A. Mr. Ringwalt put down the amount of the insurance and the name of the company and handed that to me.

Q. Look at the paper I hand you now and state whether that is the memorandum Mr. Ringwalt made and handed you at the time you are speaking of?

A. That is the memorandum.

Q. When did you first speak to Mr. Ringwalt after that about additional insurance and when did he first learn about it to your knowledge, about the additional insurance?

A. After the time I got this paper from him?

Q. Yes.

A. Why, on the morning of the 10th, I think it was, of November. That was the day after the fire on Monday morning.

Q. Where did you see him?

A. Out there at the house.

Q. What was said there about additional insurance?

A. He wanted to know if I had that insurance written I was speaking about, and I told him "Yes." He said, have I notified those companies. He wanted to know if they had been out there, and I said, "No, not so far."

Q. Was anything said about the amount of additional insurance?

A. Yes, I told him the amount.

Q. Was anything further said about it?

A. No, sir; Mr. Ringwalt seemed to be in a hurry. He didn't stop there more than ten minutes probably all together.

What is the effect of this evidence? We think that the evidence of Brown amounts to this: (1.) That about the 5th of November, prior to the destruction of the property by fire, Mr. Brown, husband and agent of the insured, went to the agents of the Insurance Company, asked them for certain information, and told them that he intended to place additional insurance upon the insured property; but we do not think that this evidence shows, nor that the jury would have been justified in inferring from it, that the Insurance Company, or its agents, knew at any time before the loss made the subject of this suit that Mrs. Brown had procured additional insurance upon the insured property. (2.) That the conduct of the Insurance Company after the loss, in submitting the amount of the loss or damage sustained by Mrs. Brown by reason of the destruction of the insured property by fire to arbitration, was evidence which tended to show that the Insurance Company at that time, having knowledge of the existence of the additional insurance, had elected to waive a cancellation of the policy on account of such additional insurance. It is true that the contract between the insured and the insurer under which this arbitration took place provided that the arbitration should not be construed as a waiver of any of the rights or defenses of either party, nor as either an admission or denial of liability on the part of the Insurance Company; but this only meant that the arbitration should not be conclusive evidence of a waiver on the part of the Insurance Company of any legal defense it might have to a suit upon the policy. The arbitration, then, while not conclusive evidence, was we think competent evidence for the jury to consider in determining whether or not the Insurance Company waived the violation of the policy by Mrs. Brown in taking out additional insurance. (3.) That the act of the

Insurance Company in canceling the policy on the 24th of November, 1890, and repaying to Mrs. Brown the unearned premium to which the Insurance Company would have been entitled for carrying the risk from the 10th of November, 1890, until noon of the 13th of March, 1895, both dates inclusive, was evidence which tended very strongly to show that the Insurance Company at that time recognized the policy as being in force up to and including the day that the loss sued for occurred. Whether the Insurance Company waived the provision in the policy which made it voidable at the election of the Insurance Company in case the insured should procure additional insurance without the consent of the company thereto having been first indorsed on the policy was a question of fact for the jury, and this question of fact was to be found one way or the other by the jury from the facts and circumstances in evidence in the case which went to show the intention of the Insurance Company in the premises. If the Insurance Company did not intend to and had not waived its right to cancel the policy by reason of Mrs. Brown's procuring additional insurance, it is very difficult to understand its conduct in going to the expense of having the amount of the loss or damage sustained by Mrs. Brown determined by arbitration; and it is still more difficult to understand why the Insurance Company paid her the unearned premium from the 10th day of November, 1890, to the expiration of the policy by its terms. Mrs. Brown having violated the policy by procuring additional insurance thereon without the knowledge or consent of the insurer, it was entitled on discovering such violation to cancel the policy by reason thereof, such cancellation to take effect from and after the date of its violation. But the Insurance Company did not do this. By its own act it canceled the policy on the 24th of November, the cancellation to take effect on and after the 10th day of November, the day after the date of the loss. The evidence then on which this verdict rests is not very satis-

factory. It is slight; but we are constrained to say we think it is sufficient.

2. That the judgment is contrary to the law of the case. The argument under this contention is that the notice given by the insured to the insurance company's agents of his intention to procure additional insurance on the insured property was not notice to the company. In other words, that notice to an agent is not notice to his principal. In view of what we have already said as to the effect of the evidence of Brown, we might dispense with any further consideration of this evidence, and would do so but for the fact that counsel seems to misapprehend the decision of this court in *German Ins. Co. v. Heiduk*, 30 Neb., 288. In that case the defense was the same as it is here—additional insurance without the knowledge or consent of the insurer, and the reply that the insurance company had waived the violation of the policy in that respect, in this, that the local agent of the insurance company orally consented to such additional insurance. The policy provided: "No consent or agreement by any local agent should affect any condition of the policy until such consent or agreement is indorsed thereon," and the court held, the present chief justice, NOR-VAL, writing the opinion, that the oral consent of the local agent to taking out the additional insurance was not binding on the company. But that case does not hold, nor does any other case in this court hold, that a notice given to a duly authorized and acting agent of a principal about a matter within the scope of such agent's authority is not notice to the principal. In the case at bar it is not claimed that the agent of the insurance company consented that the insured might procure additional insurance upon the property. The claim made is—though, as we have seen, the evidence does not sustain it—that the insured notified the agent that he had taken out additional insurance upon the insured property, and that such notice to the agent was notice to the principal. Without a doubt the conclusion

contended for would be correct if the evidence established the fact that the insured did give the insurance company's agent notice that additional insurance had been procured upon the property. It would seem unnecessary to cite an authority in support of this rule. Insurance companies for the most part are corporations. They act and can only act through agents. Some of the insurance companies doing business in this state hold charters from the parliament of Great Britain; their domicile is in England. It will not do to say that a notice, to be effective and binding upon such a company, must be served by the insured on the company at its home office in London or Liverpool. Again, it is to be remembered that the violation of this provision by the assured in procuring additional insurance on the property without the knowledge or consent of the first insurer did not render the policy issued by it void, but voidable at the election of such first insurer; that this provision was inserted in the insurance contract for the benefit of, and might be waived by, the insurer. (*Hughes v. Ins. Co. of North America*, 40 Neb., 626.) The evidence in this record shows that Ringwalt Bros. were the agents of this insurance company at the time the policy in suit was issued, and that they continued to be the agents of this company, so far as this record shows, until the present time; and that they had authority not only to issue but to cancel policies when in their judgment it was for the interest of their principals to do so.

In *Phenix Ins. Co. v. Covey*, 41 Neb., 724, this court said: "Where an insurance agent, with authority to receive premiums and issue policies, exercises such authority with knowledge of the existence of concurrent insurance on the premises, the company is estopped, after a loss, to insist that the policy is void because consent to such concurrent insurance was not given in writing." In other words, the case last cited holds that the knowledge of the insurance company's agent of the existence of insurance on the property

on which he issued the policy was the knowledge of the insurance company. This rule is supported by the overwhelming weight of authority.

In *Gans v. St. Paul Fire & Marine Ins. Co.*, 43 Wis., 108, it was held: "Knowledge on the part of the agent of an insurance company, authorized to issue its policies, of facts which render the contract voidable at the insurer's option is knowledge of the company."

In *Bennett v. Council Bluffs Ins. Co.*, 31 N. W. Rep., 948, the supreme court of Iowa said: "Where the clerk of a duly appointed agent of a fire insurance company solicits insurance on property which he knows to be insured already in another company, and his employer, the agent, issues the policy upon the application so obtained, the insurance company is bound by the knowledge of the clerk."

In *McEwen v. Montgomery County Mutual Ins. Co.*, 5 Hill [N. Y.], 101, it is said: "Notice given to an agent relating to business which he is authorized to transact, and while actually engaged in transacting it, will in general enure as notice to the principal." (See, also, *American Ins. Co. v. Gallatin*, 3 N. W. Rep. [Wis.], 772; *Mattocks v. Des Moines Ins. Co.*, 37 N. W. Rep. [Ia.], 174.)

3. Another assignment of error here is that the court erred in admitting the evidence of the witness Brown, the husband and agent of the insured. We cannot review this assignment of error. Brown's testimony covers several pages of the bill of exceptions, and the petition in error does not specifically point out any particular part of his evidence which it is alleged the court erred in permitting to go to the jury; nor does it appear from the bill of exceptions that any exception was taken to the rulings of the court in permitting Brown to give the testimony which we have quoted above. An assignment of error in this court that the district court erred in admitting the evidence of a certain witness will be overruled if any of the evidence given by the witness was competent.

4. Another error assigned is "That the court erred in giving instructions numbered 1, 2, 3, and 4, given by the court upon its own motion." The first of these instructions is in the following language: "That the terms contained in the policy of insurance which has been introduced in evidence, providing for a forfeiture of the policy under certain conditions, were inserted therein for the benefit of the defendant company, and such forfeiture may be waived by the company if it chooses so to do." Certainly the court did not err in giving this instruction; and as the assignment is that the court erred in giving all of the instructions named, it must be overruled.

5. Another assignment of error is that the court erred in modifying instructions numbered one and three asked by the Insurance Company. The third of these instructions was in the following language: "You are further instructed that it appears from the evidence that one Mr. Butler, whom the evidence shows to have been an independent adjuster, residing in St. Louis, Missouri, came here and represented the defendant in the adjustment and appraisal, but there is no evidence as to what authority, if any he possessed, and the law will presume that his power extended co-extensive with the business entrusted to him, namely, the ascertaining the amount of the loss; but it will not be presumed that he had power to alter the contract between the parties, or to waive any of its conditions, these not being within the apparent scope of his authority." And the modification complained of was the addition by the court at the end of the instruction of the following words : "But such want of authority in the adjuster, if there was such want of authority, would in no way affect the authority of other officers and agents of the company to waive the conditions of the policy." The court did not err in modifying this instruction.

6. The final assignment of error is that the court erred in refusing to give instructions 2, 4, and 5, asked by the

Insurance Company. The fourth of these instructions is in the following language: "You are instructed that so far as the evidence discloses in this case the Ringwalt Bros. were the agents of the defendant company who issued the policy and collected the premium, but when that was done, so far as the evidence shows in this case, their authority ceased and determined, and the defendant is not bound by any knowledge which came to them affecting the validity of the policy subsequent thereto, unless it be shown that the same was communicated to the company; and as to such knowledge or information as may have come to their knowledge, or to the knowlelge of either of them, and as to which there is no evidence to show the same was communicated to the company, the company is not bound, the burden being upon the plaintiff to show that such information or communication was delivered to the company." The court did not err in refusing to give this instruction; and since the assignment is that it erred in refusing to give all the instructions named, the assignment must be overruled. By this instruction the Insurance Company requested the court to tell the jury that after Ringwalt Bros., the Insurance Company's agents, had issued the policy in suit that their authority as agents of the Insurance Company ceased. This would have been wrong. The evidence in the record shows that they were not only agents of the company at the time they issued the policy in suit, but that they were agents of the company at the time the loss occurred, at the time the arbitration of the loss took place, at the time the policy in suit was canceled, and at the time of the trial of this action; and that they had authority not only to issue policies, but to cancel them. The agent of the Insurance Company said on the witness stand in this case that had he known of the existence of the additional insurance prior to the occurrence of the loss that he would have canceled the policy of Mrs. Brown. But this instruction was bad for another reason. By it the Insurance Company requested

German Ins. & Savings Institution v. Kline.

the court to charge the jury as a matter of law that the Insurance Company was not bound by any knowledge affecting the validity of the policy which came to the Insurance Company's agents unless such knowledge was communicated to the Insurance Company. We have already seen this is not the law.

There is no error in the record and the judgment of the district court is

AFFIRMED.