MODEL DRY GOODS COMPANY, Respondent, v. NORTH
BRITISH & MERCANTILE INSURANCE COMPANY,
Appellant.

### St. Louis Court of Appeals, April 4, 1899.

Fire Insurance: DAMAGES: ARBITRATION: WAIVER. The election not
to be bound by the arbitration was necessarily a waiver of the option
to take the goods at the appraisement. Held, that the trial court did
not err in modifying the defendant's instructions accordingly.

*Appeal from the Greene Circuit Court.*—HON. JAMES T.
NEVILLE, Judge.

AFFIRMED.

GOODE & CRAVENS for respondent.

At 8 o'clock a. m. on August 4, when Yates notified Levy
that defendant refused to be bound by the appraisal, the com-
pany made its election about taking the goods at their ap-
praised value and refused them. That exhausted the option.
An election is the right of choice between two or more steps
by a person not entitled to all and when once made is final.
Bishop on Contracts, 781, 784; 6 Am. and Eng. Ency. Law,
181 Ed., p. 254; Ostrander on Insurance, p. 278; Ill.
Live Stock Co. v. Baker, 153 Ill. 240. The notification was a
distinct waiver of the privilege of taking the stock. "Waiver
is where one in possession of any right whether conferred by
law or contract and of full knowledge of the material fact does
something inconsistent with the right or of his intention to
rely upon it. Thereupon he is said to have waived it and he
is precluded from claiming anything by reason of it after-
wards." Bishop on Contracts, 792; Wood on Ins. 496; Okey
v. Ins. Co., 29 Mo. App. 105. In insurance cases it is another

name for estoppel. Appleton v. Ins. Co., 59 N. H. 545.
After the decision of the appraisers was rendered, defendant
had no right to take or further inspect the property unless it
accepted and abided by the award. That was the sole basis of
the company's option, and when the appraisal was repudiated
the option was repudiated also. Swearinger v. Ins. Co., 66
Mo. App. 90. The only dispute was concerning the amount
of the loss. This was settled by the award which was final and
binding on both parties. "It was therefore under the terms
of the policy a condition precedent to a liability by defendant
to plaintiff that there should have been an adjustment by arbi-
tration of the sum due plaintiff. When this adjustment was
made then the amount fixed became due to plaintiff on the ex-
piration of sixty days." Murphy v. Mercantile Co., 61 Mo.
App. loc. cit. 329. Aside from defendant's misconduct in re-
nouncing the appraisal plaintiff was not bound to preserve its
damaged merchandise or suspend its business during thirty
days for appellant to decide on its course. The point was
maturely considered and determined in a case whose facts did
not differ materially from ours. Davis v. Ins. Co., 40 N. Y.
Supp. 248, also reported in 7 Appellate Division Reports, 488.

FYKE, YATES & FYKE for appellant.

The right to take the stock at its appraised value, upon
giving notice to this effect within thirty days after the rendi-
tion of proofs of loss, is a right clearly provided for in the
policy sued on. This is a valid and just provision. Ins. Co.
v. Hamilton, 8 C. C. A. 114; Morley v. L. & L. & G. Co., 48
N. W. Rep. 502. In Monks v. Belden, 80 Mo. 639, the su-
preme court says: "An admission made by one party to an-
other is not sufficient to create an estoppel, unless the party to
whom it was made acted upon it." "Estoppel *in pais* may be
defined to be a right arising from acts, admissions or conduct
which have induced a change of position in accordance with
the real or apparent intention of the party against whom they

are alleged." Rule laid down in Johnson, Brinkman Co. v. Railway, 126 Mo. 344, loc. cit. 353; Bigelow on Estoppel, [4 Ed.], 445; Fairbanks v. DeLissa, 36 Mo. App. 711. No man can set up another's act or conduct as the ground of an estoppel, unless he has himself been misled or deceived by such act or conduct. State ex rel. Kaufman v. Sitlington, 51 Mo. App. at 259; Reichla v. Gruensfelder, 52 Mo. App. at 50. Nor, unless it can be shown that what was said or done by the party to be estopped influenced the conduct of the other. Eitelgeórge v. Mut. House Bldg. Ass'n, 69 Mo. 56. If the other party has neither acted nor altered his situation on account of what was said or done, there can be no estoppel. Noble v. Blount, 77 Mo. 235. The rule is the same as applicable to insurance matters. 2 Biddle on Ins., sec. 1069; Weidert v. Ins. Co., 24 Pac. Rep. 242; 19 Ore. 261; Boyd v. Vanderbilt Co., 90 Tenn. 912. If an insurance company does not intend to waive, and assured does not understand that anything is waived, and is not mislead or prejudiced, there is no waiver. Findieson v. Ins. Co., 57 Vt. 520; Devans v. Ins. Co., 83 N. Y. 168; Hanna v. Ins. Co., 36 Mo. App. 543; Grigsby v. Ins. Co., 40 Mo App. 284; Gale v. Ins. Co., 33 Mo. App. 672.

BIGGS, J.—The plaintiff's stock of goods was insured against loss or damage by fire in seventeen insurance companies, among which was the defendant company. During the lives of the policies, to wit, July 15, 1897, the property was damaged by fire. The policy issued by the defendant provides that in case of disagreement as to the amount of the loss, each party should select an arbitrator, and if they disagreed, a third arbitrator was to be selected by them. A few days after the loss the adjusters of the various companies visited the city of Springfield, the plaintiff's place of business, and a disagreement having arisen between them and the plaintiff as to the amount of the damage to the goods, fourteen of the companies (including the defendant), signed an article of

arbitration.   This agreement was signed on the twenty-first day of July.   The plaintiff selected Morris Sicher as its arbitrator, and the insurance companies selected E. B. Wingate. These arbitrators attempted to estimate the loss, but failed to agree.   Wingate suggested the name of James M. Whitsett as a third arbitrator.   He was accepted by Sicher.   Whitsett was notified of his selection on July 26, and he immediately signified his willingness to act.   At this juncture Wingate interposed an objection to Whitsett for the alleged reason that his (Whitsett's) telegram of acceptance was addressed to him (Wingate), whereas it ought to have been addressed to him and Sicher jointly.   This he regarded as an affront to Sicher, but the latter did not so consider it.   Thereupon Wingate declined to proceed further with the appraisement and left Springfield for Kansas City and never returned.   Shortly afterwards Sicher and Whitsett made an examination of the stock and agreed on the original value of the stock and the amount of the damage.   On July 30 the plaintiff advised the several companies of the result of the appraisement, and in the same notice stated that it would hold the goods until August 4 subject to the right of the companies to take them at their appraised value.   The arbitrators fixed the original value of the stock at $25,300 and the damage at $6,950.   The defendant's *pro rata* share of the loss as thus determined by the arbitrators is $556, to recover which the plaintiff brings the present action, the defendant having refused to pay.   The petition sets forth substantially the above facts.

The defendant admitted the validity of the arbitration, and that proofs of loss were furnished.   As a defense to the action it was averred in the answer that by the conduct of the plaintiff subsequent to the action of the arbitrators, the defendant (with other companies) was deprived of its option to take the goods at their appraised value.   After providing for the arbitration and appraisement the policy issued by the defendant contains this provision:   "It shall be optional, however,

with the company to take all, or any part of the articles at such ascertained or appraised value, and also to repair, rebuild or replace the property lost or damaged with other of like kind and quality within a reasonable time on giving notice, within thirty days after the receipt of the proof herein required, of its intention so to do." The policy also contained this provision: "The assured as often as required shall exhibit to any person designated by this company all that remains of any property herein described." In respect to this provision the answer averred that on the fourth day of August the plaintiff without just cause refused to accord to the defendant the right therein guaranteed, by reason of which the defendant claimed a release of all liability under the policy. The reply was that the defendant by its conduct had waived these alleged rights or options.

Concerning the alleged defenses the following facts were established. The insurance companies were notified of the result of the arbitration on July 31, and by the same mail the plaintiff informed them that it would hold the stock until August 4, subject to the right of the insurance companies to take it at the appraisement. Thereupon the plaintiff advertised a "fire sale" of the stock to begin at 11 o'clock a. m., August 4, of which the insurance companies had notice. The companies sent their attorney to Springfield. He arrived on the morning of the fourth of August. He visited the plaintiff's place of business about eight o'clock in the morning and informed plaintiff's business manager that the companies repudiated, as illegal and unauthorized, the appraisement made by Sicher and Whitsett, and he demanded that new appraisers be selected, and he notified the manager that the companies did not intend to waive any of their rights under the policies including those above mentioned. He also notified the manager that he had brought with him from Kansas City a man whom he called an "expert merchandise wrecker," and he demanded that this man be allowed to examine the stock of goods.

To this the manager made no reply. The attorney then left the store and nothing more was done by him until about four o'clock in the afternoon, when he reduced the substance of the above notice to writing and had it served on plaintiff's manager. About 11 o'clock a. m. this "expert wrecker" presented himself at plaintiff's storeroom and demanded the privilege and opportunity of inspecting the stock of goods. As the sale was about to begin and a large crowd of customers had already assembled, this request was denied and the sale took place as advertised. The foregoing is believed to be a sufficient statement of all facts necessary to the determination of the legal questions involved. The cause was submitted to the court without a jury. The issues were found in favor of plaintiff and the judgment was rendered against defendant for $556. The defendant has appealed and complains of the action of the court in modifying the instructions asked by it.

It is not disputed that the defendant had the right, if it so elected, to take the stock of goods at its appraised value, and that if it did not have thirty days after the reception of the proofs of loss within which to make such election, it was at least entitled to a reasonable time thereafter to make the choice, all the circumstances being considered. It may be conceded also that under the second provision of the policy quoted above the defendant had the right of inspection, to be seasonably and reasonably exercised, and that this right remained after the arbitration, in order to aid the defendant in determining whether it would take the goods at the appraisement or pay the amount of the loss as assessed by the arbitrators. At the trial the case was made to turn upon the question whether the defendant had waived these rights or options. If there was no substantial evidence of such waiver, which is the contention of the defendant, then evidently the circuit court decided the case upon an erroneous theory, as clearly appears from the addendums of the court to the instructions asked by the defendant. The defendant asked the following instructions to which the court added the portions in brackets:

1.    "The court declares the law to be that under the law and the terms of the policy, on which this suit is based, the defendant had the right to take the stock of goods of plaintiff at its appraised value within a reasonable time, on giving notice of intention so to do within thirty days after receiving the proof of loss. And for the purpose of determining whether it would take said stock of goods at its appraised value, defendant was entitled to have it examined by any person designated by it, and if plaintiff refused to allow defendant's agent, Wollman, to inspect said stock of goods within a reasonable time after receiving the proofs of loss in evidence, then the finding must be for defendant (unless the defendant gave plaintiff notice of an intention inconsistent with the right of taking the goods)."

2.    "The court declares the law of the case to be that the defendant had the right to inspect the stock of goods in question in order to determine its option of taking same at its appraised value, within a reasonable time after the receipt of proofs of loss, and that the request made on August 4, 1897, as shown by the evidence, was within a reasonable time (but that the request was inconsistent with defendant's averred purpose not to be bound by the appraisements)."

It will be noted that on the fourth day of August, the defendant, through its attorney, repudiated the arbitration, refused to be bound by it, and demanded the selection of new arbitrators. This election was manifested both orally and in writing. In both notices, however, the defendant asserted that it intended to hold fast to its privilege to take the goods at their appraised value and to have them inspected with the view of exercising the option. It will be further noted that the defendant in its answer and at the trial, conceded the validity of the arbitration, but claimed that it had not waived but had expressly reserved its aforesaid right under the policy, and that as the plaintiff had thereafter refused to allow the defendant's expert to examine the goods and had immediately

sold them, thereby defeating the defendant's option to take them at their appraised value, the defendant was released from liability. The verbal and written notices served on plaintiff's manager by the attorney of the defendant may fairly admit of two constructions, neither of which in our opinion in any manner helps the defendant's case. The one is, that while the defendant repudiated the arbitration, it expressly reserved its rights under the award as made, that is to take the goods at the appraisement if they so elected, and in order to aid them in making the election to have the stock examined by their expert. The other construction is that the defendant repudiated the arbitration as illegal, refused to be bound by it, demanded the appointment of new appraisers, and reserved its right to take the goods under a second award. In the one case the reservation of the alleged rights is entirely inconsistent with the repudiation of the award, for the rights claimed depended upon the award, and could not exist in the absence of a valid arbitration. It is illogical to hold that the defendant in one breath could say that it repudiated the arbitration, and in the next assert and claim rights growing out of and depending on it. The election not to be bound by the arbitration was necessarily a waiver of the option to take the goods at the appraisement. Swearinger v. Ins. Co., 66 Mo. App. 90; Bish. on Contracts, secs. 781, 784 and 792; In Matter of Soule, 22 Abbott's New Cases (note), page 269. Adopting the other construction the defendant is met with its subsequent admission that the arbitration made by Sicher and Whitsett was legal and binding on it. Under this view of the evidence the defendant could only have made good its defenses by impeaching the award, which it did not attempt to do.

Under the foregoing views it is unnecessary to discuss other questions presented in the briefs. There was abundant evidence of waiver. Indeed the entire evidence tended to establish it. Therefore the circuit court did right in modifying

defendant's instructions and its findings under the instructions could not have been otherwise. With the concurrence of the other judges the judgment of the circuit court will be affirmed. It is so ordered.