MARBLESTONE COMPANY v. PHOENIX ASSURANCE
COMPANY, LIMITED, OF LONDON.
MARBLESTONE COMPANY v. GREAT AMERICAN
INSURANCE COMPANY OF NEW YORK.[1]

Nos. 24,382, 24,395.

May 29, 1925.

Note 1. The following syllabi paragraphs numbered 1, 2, 3, 4, were vacated by the opinion of October 15, 1926. See last paragraph of opinion on page 14, infra. [Reporter].

1. An inference of waiver may be drawn from the conduct of the insurer which fairly indicates that it had, with full knowledge of the situation, chosen to treat the loss as a valid, subsisting claim.

2. Where two appraisers and an umpire, chosen to appraise the loss occasioned to a stock of merchandise by smoke, met and qualified for the performance of their duties, and the insurers objected to the appraisal of the loss to a portion of the damaged stock, which had been sold by the insured subsequent to the fire, and the referee named by the insurer refused to submit the disagreement to the umpire or to proceed further with the appraisal, the insurer concurring in such refusal, held, that, under such circumstances, where the other appraiser

[1]Reported in 204 N. W. 42, 210 N. W. 385.

and the umpire proceeded and considered the evidence offered by the insured, and made and signed an award fixing the sound value and the damage to the entire stock, the insurers waived the conditions of the policy, and are precluded from complaining as to the manner of procedure and the character of the evidence received.

3. The conduct of an insurance company, after a sale of a portion of a stock of merchandise, damaged by smoke, in subsequently submitting the amount of the loss to arbitration, waived the conditions of the policies to take the property at the appraised value, and is estopped to complain of the award because of any irregularity in the procedure in adjusting the loss.

4. The assertion by an insurance company of an unwarranted claim of forfeiture for damages to a part of an indivisible claim for loss constitutes in effect an admission of liability for loss to the entire stock under the policy, and amounts to a waiver of the right later to assert a forfeiture of the entire claim.

## AFTER REARGUMENT.

### October 15, 1926.

Award of appraisers—No recovery as to goods sold by insured—Nonwaiver clause.

5. Actions upon award for damage to stock of goods insured under fire policies in North Dakota standard form—*Held after reargument*:

(1) When evidence was meager but clear that two appraisers did not agree, and the companies' appraiser was absent and did not make known his position, award of one appraiser and umpire was valid.

(2) By making sale of part of goods after the companies had demanded an appraisal and named an appraiser, the insured in violation of the contract deprived them of their optional but substantial right, to extent of property sold, to take goods at appraised value or replace them, breached the contract and lost the right to recover damages as to part sold and as to that part the companies' defense was complete.

(3) Existence of a nonwaiver clause in insurance policies does not prevent a waiver, but it should not be extended by implication beyond its exact terms, and after insurer has investigated and ascertained the facts or has agreed to nonwaiver made after loss, his conduct will be subject to the same rules as if the stipulation or agreement did not exist.

(4) The companies did not waive the insured's breach of contract or lose their right to defend on the ground that the insured could not recover for that part of the goods sold, either (a) because their appraiser failed to protest against violation of the contract, or (b) because by claiming the insured could not recover for the part sold it impliedly admitted some liability and as the contract was entire thereby waived a defense to any part of the loss, or (c) because they repudiated the award of one appraiser and the umpire.

(5) New trials must be granted. [Reporter.]

Fire Insurance, 26 C. J. p. 292 n. 40; p. 365 n. 16; p. 366 n. 23; p. 422 n. 81.

Two actions upon an award for loss of goods by fire. The action against the Phoenix company was tried in the district court for Dakota county before Schultz, J., who directed a verdict against the company. The case against the American company was tried in the district court for Ramsey county before Michael, J., who directed a verdict in favor of that company, but afterwards granted judgment in plaintiff's favor notwithstanding the verdict. The Phoenix company appealed from the denial of its motion for a new trial and the American company from the order granting plaintiff's motion for judgment notwithstanding. Both orders were reversed after reargument.

*Mitchell, Doherty, Rumble, Bunn & Butler, Bates, Hicks & Folonie* and *Lawrence, Murphy & Nilles,* for appellants.

*Harry A. Hageman* and *D. S. Ritchie,* for respondent.

Note 2. The following opinion was vacated, after reargument, by that of October 15, 1926. See last paragraph of opinion on page 14, infra. [Reporter].

QUINN, J.

Respondent was a North Dakota corporation, engaged in operating a ladies' ready-to-wear store at Valley City, North Dakota. On October 12, 1922, its stock of goods had an inventory value of $56,580. Appellants, together with 13 other insurance companies, issued policies of fire insurance on the stock to the amount of

$36,500, the two issued by appellants being for $2,000 each. All of the policies were in the North Dakota standard form.

On the day mentioned a fire occurred in a room adjoining the one where the stock was. The stock was considerably smoke-damaged. Eight days later the insurers, all joining, served a request for an appraisal and at the same time named an appraiser. Thereafter upon the same day respondent began a sale of the damaged goods, and sold and disposed of 74 per cent of the stock during the four days following, leaving goods on hand with an invoice value of $13,146.29. On November 14th respondent served a sworn statement of proof of loss upon the insurers, and thereafter two appraisers and an umpire were duly chosen.

The policies provide as follows:

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss."

The arbitrators met and qualified for the purpose of appraising the loss. Both the insured and the insurers were represented. At the outset a disagreement arose as to the manner in which the appraisement should proceed, the appraiser named by the insurers contending that only the goods on hand should be appraised, and the insurers coinciding. Upon the other hand, the appraiser named by the insured contended that the entire stock should be appraised, in which the insured concurred, the former contending that only the goods on hand should be examined and, if any disagreement arose, the umpire should decide the matter, while the appraiser named by the insured insisted that the entire stock be appraised, and that oral testimony be received without any examination of the goods. After considerable parleying, the appraiser named by the insured and the

umpire proceeded to appraise the entire stock, receiving oral testimony as to its condition, the other appraiser refusing to participate therein. The one appraiser and the umpire made and signed an award, fixing the sound value of the entire stock at $54,882.56 and the damages thereto at $30,091.37, or 54 per cent of the whole. These actions are based upon the award so made. In the Phoenix case a verdict was directed in favor of the insured, and the defendant appealed from an order denying its motion for judgment or for a new trial. In the American case a verdict was directed in favor of the defendant, but upon motion judgment was ordered in favor of the plaintiff, from which defendant appealed.

When the appraisers met and qualified, they should have proceeded with an appraisal. It was the duty of both parties to choose an appraiser willing to act fairly and submit all disputes to the umpire, and, if either party failed in procuring such an appraiser, he should be replaced by another. Appraisers should act as a quasi court and decide the matters on, the evidence offered by the respective parties. Christianson v. Norwich U. F. Ins. Soc. 84 Minn. 526, 88 N. W. 16, 87 Am. St. 379; American Cent. Ins. Co. v. District Court, 125 Minn. 374, 147 N. W. 242, 52 L. R. A. (N. S.) 496. They are in no sense the agent or representative of either party. The appraisal may include goods wholly destroyed as well as those partially destroyed or damaged. There was no provision in the policy as to what the procedure should be, nor as to the character of the evidence. Under these conditions, the arbiters had a general discretion as to the mode of procedure and the kind of evidence to be received. 5 C. J. 172; Carlston v. St. P. F. & M. Ins. Co. 37 Mont. 118, 94 Pac. 756, 127 Am. St. 715.

It appears from the answers that, on January 9, 1922, the appraisers and umpire met for the performance of their duties; that the plaintiff and the appellants were represented at such meeting, and throughout said meeting the appellants objected to an appraisal of the loss or damage to the goods which had been sold, and demanded that the appraisal be confined to the goods on hand, and that the same be examined by the appraisers for the purpose of ascer-

taining the damage thereto; that such demands were concurred in by Mr. Glasrud, appraiser named by the appellants; that, notwithstanding such objection, the other appraiser and the umpire proceeded to appraise the damage to the entire stock of goods claimed to have been damaged by the fire; that for such purpose oral testimony was offered, but no examination of the goods on hand was made; and that Mr. Glasrud refused to make any estimate of the loss or damage to the goods that had been sold. There was testimony to the effect that Mr. Glasrud sat with the other arbiters while all of the testimony was being received; that he was asked to join in the estimates, but refused; that the other appraiser then consulted with the umpire, and finally arrived at a conclusion and the award was accordingly prepared, Mr. Glasrud refusing to sign the same.

In failing to replace the balky appraiser, as was their duty, and by coinciding with him in refusing to submit all of the matters in dispute to the umpire, as to the mode of procedure, as to what goods should be appraised, and in refusing to further participate in the adjustment, the appellants waived the conditions of the policies, and are precluded from complaining as to the manner of procedure and as to the character of the proofs received, as well as to what goods should be appraised. The purpose of an umpire was to settle such disputes, as well as the difference of opinion as to the value of the goods and amount of damage that might arise in arriving at the loss. The award should stand.

It is urged that plaintiff breached the terms of the policies by a sale of a portion of the damaged goods, thereby depriving the insurers of the option to take all or any part of the damaged stock at its appraised value. The policies provide that

"It shall be optional, however, with this company to take all, or any part, of the articles at such ascertained or appraised value."

After the sale of 74 per cent of the stock of goods, the insurers joined with the insured in the selection of proper appraisers. The appraisers selected an umpire. They all met and qualified. Both the appellants and the respondent were represented. A disagree-

ment arose between the appraisers. The umpire determined in favor of the attitude assumed by the appraiser named by the insured. Thereupon the other appraiser refused to further participate in the matter. The one appraiser and the umpire proceeded to receive proofs and determine the loss, and made an award in which the sound value of the entire stock was fixed, as well as the damage thereto. We are of the opinion and hold that by their conduct in the premises and by repudiating the award the insurers waived the conditions of the policies to take the property at the appraised value, and are now estopped to complain of the award because of any irregularity in the procedure. Kent & P. P. Co. v. Aetna Ins. Co. 165 Mo. App. 30, 146 S. W. 78; Model Drygoods Co. v. North British & Merc. Ins. Co. 79 Mo. App. 550; Eagle Fire Co. v. Globe L. & T. Co. 44 Neb. 380, 62 N. W. 895; Illinois Live Stock Ins. Co. v. Baker, 153 Ill. 240, 38 N. E. 627; Home Fire Ins. Co. v. Kuhlman, 58 Neb. 488, 78 N. W. 936, 76 Am. St. 111; Beauchamp v. Retail M. Assn. M. F. Ins. Co. 38 N. D. 483, 165 N. W. 545.

Appellants were fully apprized of the sale of a portion of the damaged goods through the proofs of loss served upon them wherein it was clearly stated that the sales of damaged goods after the fire amounted to $19,408.31; less expenses of sale, $1,189.95; net proceeds of sale, $18,218.36; inventory of goods on hand after sale, $13,146.14. Some six days after receiving the above information appellants, without asserting any claim of forfeiture or nonliability, took an active part in procuring a board of appraisers under the provisions of the policies. In other words, appellants remained persistent in obtaining an appraisal of the loss long after the sale of a portion of the stock. They now rely upon a provision in the policies which is as follows:

"This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act or proceeding on its part relating to the appraisal or to any examination herein provided for."

Clearly the foregoing provision was inserted in the policies for the benefit of the insurers and may be waived by them. It may be assumed that the insurers intended to carry out the purposes of the

policies, and, if they saw fit to waive any of the provisions inserted therein for their benefit, they may do so. This view is well supported by authority. 19 Cyc. 657; Parsons, Rich & Co. v. Lane, 97 Minn. 98, 106 N. W. 485, 4 L. R. A. (N. S.) 231, 7 Ann. Cas. 1144; Mee v. Bankers Life Assn. 69 Minn. 210, 72 N. W. 74; Beauchamp v. Retail M. Assn. M. F. Ins. Co. 38 N. D. 483, 165 N. W. 545; Home Fire Ins. Co. v. Kennedy, 47 Neb. 138, 66 N. W. 278, 53 Am. St. 521; Hollis v. State Ins. Co. 65 Iowa, 454, 21 N. W. 774; Titus v. Glens Falls Ins. Co. 81 N. Y. 410; Kiernan v. Dutchess County Mut. Ins. Co. 150 N. Y. 190, 44 N. E. 698; Bishop v. Agricultural Ins. Co. 130 N. Y. 488, 29 N. E. 844. Many other cases might be cited, all bearing upon the same proposition.

It is set forth in the answers, after alleging the sale of a portion of the damaged goods, that, by reason of the facts set forth, plaintiff forfeited all right to an appraisal of damages to the property sold, as well as all right to recover damages therefor. It is further alleged that the actual amount of such damage was less than $10,000 and further that the award as made was grossly excessive. The answer to this contention is that the policies covered the entire stock of merchandise as one item and is in no manner divisible. The premium was paid for the whole risk as a single item. There is but a single provision for submission to arbitration, and that is for an appraisal of the loss to the entire stock insured. We know of no authority giving a right of appraisal to a portion of the property damaged. By assuming such attitude, appellants concede liability for a part of the loss. It must follow that the asserting of an unwarranted claim of forfeiture for damages to a part of an indivisible claim for loss must be taken as an admission of liability by appellants for the entire loss to the extent covered by the policies, in effect amounting to a waiver of their right to assert a forfeiture of the entire claim. Parsons, Rich & Co. v. Lane, 97 Minn. 98, 106 N. W. 485, 4 L. R. A. (N. S.) 231, 7 Ann. Cas. 1144; Plath v. Minn. F. Mut. F. Ins. Assn. 23 Minn. 479, 23 Am. Rep. 697; 26 C. J. 101. It follows that the order appealed from in each case should stand.

Affirmed.

STONE, J. concurs in result.

### AFTER REARGUMENT.

Note 3.   The following opinion was filed on October 15, 1926, and vacated the preceding opinion.   [Reporter].

PER CURIAM.

A rehearing was granted.   The questions involved were reargued and have been reconsidered.

The action is on the award or finding of damages by the appraisers.   The claims of the parties may be understood from the following:

(1)   The defendant claims that the award was a nullity because one of the appraisers, its own, failed to act, though present, and that there was no submission of differences to the umpire as required by the policy as a condition to an award.

(2)   The defendant claims that the plaintiff lost the right to recover any part of its loss because it sold a large portion of the property, or at least lost the right to recover as to the portion sold; and the plaintiff's contention in this connection is that the defendant, by various acts to be noted as we proceed, waived all defenses.

1.   The parties argued at length the first point which applies only to the Phoenix policy.   The plaintiff's contention may be disposed of shortly.   The evidence is meager.   It is clear however that the two appraisers did not agree.   The defendant's appraiser was not there to work out an agreement as to damages.   He did not agree nor particularly oppose.   He was negative.   He did not make known his position.   The award of the appraiser and the umpire, as against the objection made, was valid.

2.   It is well to understand at the outset that the defendant does not claim a forfeiture of the policy.   There was no misrepresentation when it was issued, nor did anything occur afterwards and before the fire in breach of it.   At the time of the fire it was in force and the defendant was legally liable.

There was a disagreement as to the amount of the loss.   The defendant demanded an appraisal.   The policy provided that the insured should separate the damaged and undamaged property, make

an inventory, and give a right of inspection when demanded by the defendant; and relative to the taking or replacing of the property by the defendant there was this provision:

"It shall be optional, however, with this company to take all, or any part, of the articles at such ascertained or appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time on giving notice, within thirty days after the receipt of the proof herein required, of its intention so to do; but there can be no abandonment to this company of the property described."

On the day the defendant demanded an appraisement the plaintiff commenced a sale which in four days resulted in the disposition of 74 per cent of the property. The plaintiff alleges but offers no proof that this was done with the consent and authority of the defendant. The defendant alleges but offers no proof that it was done against its protest.

By making the sale the plaintiff deprived the defendant of the right, to the extent of the property sold, to take it at its appraised value, or to replace it, and cannot recover damages to the portion sold. This is the result of the cases: Astrich v. German Am. Ins. Co. (C. C.) 128 F. 477; Astrich v. German Am. Ins. Co. 65 C. C. A. 251, 131 F. 13; Providence Washington Ins. Co. v. Wolf (Ind. App.) 72 N. E. 606; Oshkosh Match Works v. Manchester Fire Assur. Co. 92 Wis. 510, 66 N. W. 525; Hamilton v. Liverpool L. & G. Ins. Co. 136 U. S. 242, 10 Sup. Ct. 945, 34 L. ed. 419; Johnson v. Hartford Fire Ins. Co. 94 Misc. 163, 157 N. Y. Supp. 893. In reaching this conclusion we do not overlook Davis v. Grand Rapids Fire Ins. Co. 15 Misc. 263, 36 N. Y. Supp. 792, affirmed without opinion in 157 N. Y. 685, 51 N. E. 1090.

To combat this result the plaintiff urges that the defendant's right to take the property at its appraised value or to replace it was optional, and so it was. It was the right to take or replace after appraisal and proof of loss if it chose. It was this optional right, a substantial right secured by the contract, of which the plaintiff deprived it. To say that it never offered to take or to replace the

property and might never have exercised its option is no answer to its claim of breach. It was entitled to exercise its judgment after appraisal and proof of loss. The plaintiff, in violation of the contract, took away the defendant's opportunity and of this it complains. What we may speculate that it might or might not have done is unimportant.

If we have proceeded correctly thus far the situation is this: There was liability on the policy at the time of the loss. The liability was to be determined in a specific way, that is, by appraisal, with the right in the defendant to take or replace the damaged property. When the plaintiff disposed of 74 per cent of the property the defendant's right to take or replace, as to the property sold, was gone. The defense of the defendant, as to the property sold, was then complete. It has the defense now unless lost by waiver. By directing judgment for the plaintiff the court determined that the defense was waived as a matter of law. If waived it was waived either by some action in reference to the proofs of loss or the appraisement.

The proofs of loss were submitted. In its answer the defendant alleges that it notified the plaintiff that they were incorrect and not in compliance with the policy. The reply assumes to set forth the terms of the notice but there is no proof. From what is before us no waiver can be found.

The more serious question is in connection with the appraisal. After the sale appraisers were selected and they appointed an umpire. This was after the proofs of loss were furnished and when the defendant knew of the sale. The appraisers met on January 9, 1923, and the one appointed by the plaintiff and the umpire determined the loss. The appraisement was of the entire property, that sold 2 or 3 months before and that remaining unsold.

Perhaps, when the sale came to the attention of the defendant, it might have renounced liability and refused to proceed with the appraisal and have defended, so far as it was sought to enforce damages for the property sold, upon the ground of the breach. But some property, a substantial fraction, remained which could be appraised. The defendant had to do something. It might put the

plaintiff in the wrong by continuing with the appraisal, and insisting that there could not be an appraisal of or liability for more than that remaining. It could make the claim, we think, that the plaintiff could not have an appraisal of that left, or a recovery of damages to it, that is, that the plaintiff's breach was complete and prevented any recovery, without being charged with a waiver by its participation. In this connection the defendant refers to the provision of the policy, quoted in the former opinion, as to nonwaiver.[1] This language was construed in Beauchamp v. Retail Merchants Assn. 38 N. D. 483, 165 N. W. 545, where the court, referring both to a policy nonwaiver clause and an agreement of nonwaiver made after loss, said:

"Such stipulations and agreements should not be extended by implication beyond their exact terms, and the conduct of the insurer after it passes the stage of investigation and ascertainment will be subject to the same rules as though such stipulation or agreement did not exist."

It may be inaccurate to speak of waiving a nonwaiver clause. The cases use such language; and the authorities are that the existence of a nonwaiver clause does not prevent a waiver. Henderson v. Standard Fire Ins. Co. 143 Iowa, 572, 121 N. W. 714; McMillan & Son v. Insurance Co. of N. A. 78 S. C. 433, 58 S. E. 1020, 1135; Springfield F. & M. Ins. Co. v. Fine, 90 Okla. 101, 216 Pac. 898; Penn. Fire Ins. Co. v. Hughes, 47 C. C. A. 459, 108 F. 497; Queen of Ark. Ins. Co. v. Malone, 111 Ark. 229, 163 S. W. 771; McCollough v. Home Ins. Co. 155 Cal. 659, 102 Pac. 814, 18 Ann. Cas. 862. These cases involve forfeitures of the policy for misrepresentations preventing liability attaching, or breaches afterwards and before loss resulting in a release of liability, as do the cases cited by plaintiff. Home Fire Ins. Co. v. Kennedy, 47 Neb. 138, 66 N. W. 278, 53 Am. St. 521; Hollis v. State Ins. Co. 65 Iowa, 454; Eagle Fire Co. v. Globe L. & T. Co. 44 Neb. 380, 62 N. W. 895; Titus v. Glens Falls Ins. Co. 81 N. Y. 410; Kiernan v. Dutchess County Mut. Ins. Co. 150 N. Y. 190, 44 N. E. 698. Still, the nonwaiver clause must be given its fairly intended effect.

[1] See page 7, supra.

If at the appraisal the defendant had insisted that by the sale of the property the plaintiff had lost its right of recovery for damages to any of it, or of damages to any of it except that remaining unsold, there would be no difficulty. It did not do this. Its appraiser did nothing. But the plaintiff's violation of the stipulation of the contract was palpable and the defendant should not be penalized by holding that it waived the breach because it did not protest. The damage was done and the plaintiff could not repair it. It should still have the defense that there could be no award as to the property sold.

It is another contention of the plaintiff, if we get its position correctly, that the defendant, by assuming the attitude that the plaintiff could not recover for the property sold, impliedly admitted some liability, and, the contract being an entire one, thereby waived the right to assert a defense against any part of the loss. There are cited Plath v. Minnesota F. M. F. Ins. Assn. 23 Minn. 479, 23 Am. St. 697; Parsons, Rich & Co. v. Lane, 97 Minn. 98, 106 N. W. 485, 4 L. R. A. (N. S.) 231, 7 Ann. Cas. 1144; Page v. Rollingstone Mut. F. F. Ins. Co. 166 Minn. 74, 207 N. W. 24. These cases involve situations where the policy is for a single premium and specific amounts are allotted to different items of property, and as to one item there is a breach. It is our holding, as illustrated by these cases, that the breach goes to the entire policy. The application of the doctrine is noted in 26 C. J. 101. It is without application here. There was no breach affecting the validity of the policy. It was in force and enforceable at the time of the loss. There is nothing in the cases cited favorable to the plaintiff. If the defendant had conceded liability for the damage to the property not sold, the case would give us no trouble. That would have been as much as the plaintiff could ask. It could not complain, and there would be no ground for asserting a waiver. Besides the plaintiff is basing its claim in this connection upon the facts alleged in the answer which it denies in its reply. There is an issue, there was no evidence, the issue remains and it cannot claim an admission. Mosness v. German Am. Ins. Co. 50 Minn. 341, 52 N. W. 932.

There is a suggestion that the repudiation of the award by the defendant was a waiver. Unless it repudiated the award it should have paid it. The repudiation was a denial of liability and in the way of a defense. The plaintiff is put much in the situation of saying that the defendant by asserting a defense waived it.

In discussing the questions involved we have had in mind the record in the Phoenix case. The point first considered is not involved in the Great American case. Upon the second point we do not understand that the record in the latter case is less favorable to the defendant than in the former.

Our conclusion is that the defendant's first point, involving the Phoenix policy, is without merit; that by selling the damaged property the plaintiff breached materially its contract; that it thereby lost its right to recover damages to the property sold; that the defendant upon such breach had a defense; that it did not waive its defense by the part it took in the appraisal or by other acts; and that it is still liable for damages to the property not sold.

We cannot close the litigation by directing judgment for the damages to the unsold property. It was not appraised separately, nor its value shown. There must be new trials. The former decision is vacated and this opinion stands as the opinion in the case.

Orders reversed.