might offer the real estate of a third person for sale without written authority without committing any possible offense against the laws; might offer it to the man within the limits of New York, and the other, by making a counter offer, under the same conditions, would be guilty of a crime under the statute. Is it possible, under a Constitution which forbids that any member of the state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, that this can be the law? Is it within reason that an act, innocent and innocuous in all places, involving no more possibilities of abuse than are to be found in every contractual relation of life, should be a crime on one side of the boundary line between New York and Mt. Vernon and an innocent act on the other; that the mere taking of a step within the same legislative jurisdiction could make that a crime which otherwise was without vice of any character? The power of the Legislature to declare what shall constitute a crime is exceedingly large, and it is difficult to define its exact limit. But that there is a limit even to that power under our Constitution we entertain no doubt, and we think the limit has been reached and passed in the act under review. People v. Gillson, 109 N. Y. 389, 403, 17 N. E. 343, 4 Am. St. Rep. 465.

The judgment appealed from should be reversed, and a new trial granted, with costs. All concur.

---

(86 App. Div. 323.)

TOWNSEND et al. v. GREENWICH INS. CO. OF THE CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, Second Department. July 24, 1903.)

1. INSURANCE—LOSS—APPRAISERS—ACTION ON POLICY—EVIDENCE.
    Where in an action on a policy, after disagreement as to the amount of the loss, the parties entered into a written agreement as provided by the policy, appointing appraisers to determine the amount of the loss without restriction, and such appraisers fixed the loss at $4,156.58, parol evidence, in the absence of fraud or mistake, was inadmissible, in a subsequent action to recover the face of the policy, to show a prior agreement for the appointment of such appraisers, limiting their authority to fix the loss at a sum not less than $6,000.

2. SAME—DIRECTION OF VERDICT—EXCLUSION OF EVIDENCE.
    Where in an action on a policy parol evidence varying a written contract for the appointment of appraisers was erroneously admitted, the court, on a motion to direct a verdict, was entitled to disregard the same.

3. SAME.
    Appraisers appointed by parties to a standard fire policy to fix the amount of a loss are not arbitrators, and hence the fact that plaintiffs were not notified of the meetings of the appraisers did not affect the validity of their findings.

4. SAME—ACTION ON POLICY—TENDER OF AMOUNT PAID.
    Where insurer paid its proportion of the amount of a loss fixed by appraisement to a mortgagee of the property, as authorized by the policy, insured was not entitled to sue on the policy without offering in the pleadings to return to insurer the amount so paid, and tender the same on the trial.

Appeal from Trial Term, Nassau County.

Action by Charles De Kay Townsend and another against the Greenwich Insurance Company of the City of New York and another.

From a judgment in favor of defendant insurance company (78 N. Y. Supp. 897), plaintiffs appeal. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Abel Crook (Mortimer S. Brown and William D. Gaillard, on the brief), for appellants.

Michael H. Cardozo, for respondent.

WOODWARD, J. The plaintiffs in this action were the owners of a certain hotel property known as the "Seawanhaka Hotel," in the town of Oyster Bay. This property was insured by the defendant, which wrote a standard policy, with a mortgagee clause, payment to be made to the defendant Louise C. Blyth in case of loss. The latter, at the time of the fire in which the loss in controversy was incurred, held a mortgage for the sum of $20,000 upon the premises, and two other insurance companies stand in the same position as the defendant insurance company in this action. The defendant Louise C. Blyth declined to join as a plaintiff in this action, and was made a defendant. The building upon which the policy was written was consumed by fire on the 4th day of March, 1901. Subsequently a controversy arose over the valuation put upon the property by the plaintiffs, and the defendant insurance company, acting under the provisions of the policy, entered into a written agreement with the plaintiffs for the appointment of appraisers to determine the amount of the loss. These appraisers appear to have been chosen in the manner pointed out by the policy—the plaintiffs selected one, the defendant insurance company one, and the two so chosen elected an umpire, and the three appraisers joined in an appraisal, finding the loss to have been $4,156.58. This finding was made in writing, signed by all three of the appraisers, and the proportion of this amount which was due from the defendant insurance company was $1,484.50. This latter sum the defendant insurance company paid over to the mortgagee, taking her receipt in full for all demands against the company. The plaintiffs bring this action to recover the full amount of the policy, without returning or offering to return the amount which has concededly been paid to the mortgagee for their benefit, and claim that they have a right to recover because the agreement for the appointment of appraisers was brought about by the understanding between the plaintiffs and defendant's agent that the only question to be submitted to the appraisers was whether the loss should be fixed at $6,000 or $7,000. The plaintiffs insist that two of the insurance companies interested in the loss were willing to fix the sum at $7,000, but that the defendants claimed that the loss was only $6,000, and that it was this difference which was to be adjusted by the appraisers. The defendants, however, show that the written agreement called for the appraisal provided for by the policy, and, while the learned court at trial term permitted the plaintiffs, over the objection and exception of the defendants, to introduce evidence tending to establish their contention, there can be no doubt that this was error, and that the court, upon a motion to direct a verdict, had a right to disregard this testimony. Wilson v. Deen, 74 N. Y. 531; Bohleber v. Wael-

den, 150 N. Y. 405, 410, 44 N. E. 1041.  An oral contemporaneous stipulation, not embraced in the writing, is ineffectual to control its effect.  Bohleber v. Waelden, supra, and authorities there cited.  The learned court submitted the questions to the jury—reserving all questions of law—whether the appraisal was to be limited to the question of the value of the property above $6,000, and as to the actual value of the property destroyed, and both of these findings were favorable to the contentions of the plaintiffs; but in disposing of the defendant's motion to direct a verdict the learned court held that the evidence offered to change the terms of the agreement to fix the damages by a commission of appraisal was improperly in the case, and directed that judgment be entered in favor of the defendant insurance company upon the merits, with an extra allowance of 5 per cent. upon the amount claimed in the complaint.  The plaintiffs appeal from this judgment.

In the absence of proof of fraud or mistake, there can be no doubt of the correctness of the disposition which the learned court has made of this case (Wilson v. Deen, supra), and we are clearly of opinion that the plaintiffs failed to show that the agreement was entered into by reason of any legal fraud practiced upon them by the defendant insurance company.  It is quite probable that the defendant's agent in the course of the negotiations assumed that the amount of the loss was $6,000, and that there was some talk that the question was practically to determine whether the loss should be fixed at $6,000 or $7,000; but there is no suggestion in the evidence that any one was deceived as to the terms of the written agreement which was signed by the parties, and this gives no intimation that there is any reservation of any question affecting the amount of the loss, and the evidence does not show that either the plaintiffs or the defendants made such a suggestion to their representatives on the commission of appraisal.  All that may be gathered from this agreement, which is to be read in the light of the policy of insurance, is that the parties have disagreed as to the amount of the damages, and that they have acted upon the provisions of the policy, and selected their appraisers, who are to determine this fact.  If this agreement, the terms of which were fully known to all of the parties, did not express the understanding of the plaintiffs and defendant insurance company, they have only themselves to blame; and the courts cannot be expected to overturn well-established rules of law to enforce conditions which the parties have not thought it necessary to include in their writings.

The plaintiffs insist upon referring to the appraisers as arbitrators, and urge various matters which might be of importance if they were, in fact, arbitrators; among them, that the plaintiffs never had any notice of the meetings of the appraisers, etc.  The provision of a standard insurance policy that in the event of a disagreement the amount of the loss shall be determined by "two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire," contemplates that each party shall have a representative, each having an equal voice in the selection of the umpire, and that the determination shall fix, not the liabilities of the parties under the

law, but the amount of the value of the property destroyed. This does not oust the court of any part of its jurisdiction, and, in the absence of bad faith, the mere fact that the parties are not given notice of the meetings of the appraisers does not affect the validity of their proceedings. The appraiser selected by the plaintiff is his representative. He is chosen for the purpose of guarding the rights of the man who selects him; and it must be assumed, in the absence of evidence to the contrary, that he has discharged this duty, and that the plaintiff has had an opportunity of being heard, if such a hearing was necessary to the preservation of his rights. In the case at bar, if the plaintiffs had been notified of the meetings, and had attempted to govern the action of the appraisers by insisting upon their present contention that the powers of the latter were limited to the question of the difference between $6,000 and $7,000, it would have been the duty of the appraisers to have refused to read this condition into the contract; and it does not appear that there was any lack of information on the part of the plaintiffs' representative as to the value of the property, or that he was in any way guilty of any misconduct. He joined in the award, and, as no erroneous rule of action was shown, there is no reason why the plaintiffs should not be bound by the result of this appraisal, which they had contracted to abide by in procuring their insurance. Silver v. Western Assurance Co., 164 N. Y. 381, 383, 384, 58 N. E. 284. The defendant insurance company has accepted the result, has paid over the money to the defendant Louise C. Blyth, and the latter has refused to become a plaintiff in this action, although it appears that she had a very substantial mortgage upon the premises, and was entitled to all of the moneys which might become due upon this and other policies.

It is not necessary to determine whether the contract of insurance, with its mortgagee clause, was such that the plaintiffs could have no cause of action; but it seems to be well settled that under the circumstances of this case it was necessary, before the action could be maintained by any one, that the amount which had been paid for the benefit of the plaintiffs, under the forms sanctioned by the terms of the policy, should have been offered to the defendants in the pleadings, and tendered upon the trial. Remington Co. v. London Assurance Corporation, 12 App. Div. 218, 226, 43 N. Y. Supp. 431, and authorities there cited. This has not been done. The plaintiffs, having the benefit of the amount paid, bring this action to collect the full amount of the policy, and a careful examination of all of the matters urged upon our attention by the appellants fails to disclose a single reason why this judgment should be reversed. The defendant insurance company appears to have done everything required by the letter and spirit of its contract, and the only reason which the plaintiffs have for complaint is that they elected to abide by the action of the appraisers, instead of agreeing upon the sum of $6,000, which it is claimed the defendants were willing to concede.

The judgment appealed from should be affirmed, with costs. All concur.