## KENT & PURDY PAINT COMPANY, Respondent, v. AETNA INSURANCE COMPANY, Appellant.

### St. Louis Court of Appeals, April 2, 1912.

1. **FIRE INSURANCE: Pleading: Petition: Aider by Answer.** In an action on a fire insurance policy to recover the amount of the appraisement of a loss, made by appraisers appointed pursuant to a requirement of the policy, on insurer and insured being unable to agree on the amount of the loss, the insurer urged on appeal that the petition "counts on an award in writing and yet states no facts or terms of the policy which gives effect to the award." *Held,* that whatever the petition lacked in respect to the point made by defendant was fully supplied by the allegations of its answer; such allegations not being facts that would avoid the action, but, on the contrary, facts that were bound to be proven in the first instance in support of it, and hence not affected by a reply which denied all allegations of "new matter" in the answer.

2. **PLEADING: Petition: Aider by Answer.** The omission of essential averments from the petition is cured by allegations in the answer covering the omitted matter; and this is true notwithstanding the reply denies all allegations of "new matter" in the answer, where the averments supplied by the answer relate to facts essential for plaintiff to prove to maintain the action.

3. ————: **"New Matter:" Definition.** A denial, in a reply, of all allegations of "new matter" in the answer includes only facts which would avoid the action and which plaintiff is not bound to prove in the first instance in support of it.

4. **FIRE INSURANCE: Submission of Loss to Appraisers: Nature of Finding.** An action on a fire insurance policy to recover the amount of an appraisement of a loss, made by appraisers appointed pursuant to a requirement of the policy, on

insurer and insured being unable to agree on the amount of the loss, is not an action on an "award" under a "submission to arbitration," in the accepted legal sense of those terms, but is an action on a contract, in which the appraisal—something less than an award—is used as conclusive evidence of the amount of damage.

5. ———: ———: **Misconduct of Appraisers: Pleading.** In an action on a fire insurance policy to recover the amount of an appraisement of a loss, made by appraisers appointed pursuant to a requirement of the policy, on insurer and insured being unable to agree on the amount of the loss, a demurrer to a cross-bill, which set up misconduct of the appraisers and prayed for a vacation of the appraisement, was properly sustained; that being matter of defense at law and properly presented by an answer.

6. ———: ———: **Disposal of Property by Insured: Waiver of Rights by Insurer.** In an action on a fire insurance policy to recover the amount of an appraisement of a loss, made by appraisers appointed pursuant to a requirement of the policy, on insurer and insured being unable to agree on the amount of the loss, the fact that insured disposed of the remaining insured property after the appraisal would not defeat a recovery by him, although the policy gave insurer the right to take the property at its appraised value, where insurer repudiated the appraisal, thereby losing such option.

7. ———: ———: **Presumptions.** Where property is appraised, pursuant to a requirement of a fire insurance policy, the presumption is, that the appraisal was made in accordance with the law and the policy and that the appraisers proceeded properly and appraised the proper loss only; and the burden of proving the contrary rests on the party asserting it.

8. ———: ———: **Procedure.** Appraisers chosen to appraise a loss, pursuant to a requirement of a fire insurance policy, are not to be governed in their proceedings by the rules applicable to technical arbitrations and court proceedings, but are to proceed according to the dictates of business sense, prudence and judgment.

9. ———: ———: ———: **Regularity of Proceedings: Facts Stated.** A fire insurance policy provided that in the event of a disagreement between insurer and insured as to the amount of the loss, each of the parties should select an appraiser, who together should appraise the loss, stating separately the sound value and damage, and, failing to agree, should submit their differences to an umpire selected by them, and that the award in writing of any two should determine the amount of the loss. Insurer and insured, being unable to agree on the amount of the loss, two appraisers and an umpire were appointed. One

appraiser and the umpire joined in an appraisement, and insured instituted action for the amount thereof. *Held*, under the evidence, that the appraiser and umpire, in making the appraisement, proceeded according to the dictates of business sense, prudence and judgment; that they valued each article and item of the goods to be appraised; that, before the umpire was called in, the appraisers could not agree; that the appraisers "submitted their differences" to the umpire, as required by the policy; that the appraisers did not abandon their function to the umpire and let him proceed alone; and that the umpire was not guilty of acting in a hasty and perfunctory manner, in performing his duties.

10. ———: ———: **Procedure.** A clause in a fire insurance policy, providing that in case of a disagreement between insurer and insured as to the amount of the loss, each of the parties shall select an appraiser, and that "the appraisers together shall then (after choosing an umpire) estimate and appraise the loss," does not require the appraisers to view the damaged property together, nor forbid their doing it separately.

11. **APPELLATE PRACTICE: Conclusiveness of Finding of Facts.** A finding of the trial court, sustained by evidence, is conclusive on appeal, in the absence of a showing of arbitrary action, under passion or prejudice.

12. **FIRE INSURANCE: Submission of Loss to Appraisers: Procedure.** A clause in a fire insurance policy, providing for the appraisement of a loss by two appraisers, in case of disagreement between insurer and insured as to the amount thereof, and that the appraisers shall submit their differences to an umpire selected by them, does not require or authorize the umpire to hear testimony, but contemplate that the appraisers and the umpire shall make the appraisal.

13. ———: ———: ———: **Notice of Meeting.** Where, pursuant to a provision of a fire insurance policy, the appraisers appointed to appraise a loss submitted their differences to an umpire selected by them, it was not necessary to give notice to the parties themselves, or to give them an opportunity to be heard, but it was sufficient if the appraisers had notice of the meeting at which action was taken, and were advised of and acquiesced in the prior proceedings.

14. ———: ———: ———: **Failure of Appraiser to Attend Meeting.** Where, pursuant to a provision of a fire insurance policy, the appraisers appointed to appraise a loss submitted their differences to an umpire selected by them, an appraisement by one appraiser and the umpire was not vitiated by the failure of the other appraiser to attend the meeting at which the appraisement was agreed upon, after being notified to do so.

Appeal from St. Louis City Circuit Court.—*Hon.*
*George H. Williams,* Judge.

AFFIRMED.

*Barclay, Fauntleroy & Cullen* for appellant.

(1) The petition does not state a cause of action.
It counts on the "award in writing," and yet states
no facts or terms of the policy which give effect to the
award. No liability whatever is disclosed by the peti-
tion. Frissell v. Fickes, 27 Mo. 557; Walt v. Huse,
38 Mo. 210; Bridgeman v. Bridgeman, 23 Mo. 272.
(2) The recitals of the answer (concerning the ap-
praisal) cannot supply or aid the petition when those
recitals are denied by the reply. Mosness v. Insur-
ance Co., 50 Minn. 341, 52 N. W. 932; Thrush v. City,
21 Mo. App. 394; Cohn-Baer Co. v. Realty Co., 102
N. Y. Supp. 122, affirmed, 191 N. Y. 533; Sterling v.
Sterling, 43 Ore. 200.  (3) The immediate sale of
the damaged goods, without notice to defendant,
depriving the latter of the right (given by the policy)
to "take all or any part" thereof "at such ascertained
or appraised value," defeated the recovery, and the
trial court erred in excluding evidence thereof. Mor-
ley v. Insurance Co., 85 Mich. 210.  (4) The per-
emptory instruction for defendant should have been
given on several grounds:  (a) The umpire had no
right to refuse a hearing to the appraiser Albrecht,
and his failure to grant a hearing vitiated the award.
The policy provides that the appraisers "shall sub-
mit their differences to the umpire, and the award
in writing of any two shall determine the award of
loss." Insurance Co. v. Traub, 83 Md. 524; Strome
v. Assurance Corporation, 47 N. Y. Supp. 481; Mul-
len v. Insurance Co., 67 N. W. 445; Schiff v. Insurance
Co., 64 Atl. 63.  (b) The only thing which gave the

umpire authority to act, at all, or have, or take any part in the award, was to have submitted to him "their differences." The appraisers, by the policy provisions, "shall submit their differences to the umpire." That made it incumbent on him to hear those "differences." This, he refused to do. As it was, he heard neither appraiser. This rendered the award void. Strome v. Assurance Co., 47 N. Y. Supp. 481; Insurance Co. v. Traub, 83 Md. 524. (c) The award, consequently, was one man's award—that of the umpire. He, therefore, did not pass on any "differences," either as to "stating (separately or otherwise), the sound value or the damages." (d) The umpire could act only in case of the two appraisers' "failure to agree," in which event, and only in that event, could the umpire act. And it was the duty of the two appraisers to get together and make an honest effort to "agree" as to what the "loss and sound value" was. They could not capriciously or arbitrarily say they could not agree. Much less could the two arbitrators, in the language of arbitrator Way: "Agree that the umpire should go and view the loss alone, take our lists and draw his own conclusions and render his own award." New York Association v. Assurance Co., 87 N. Y. Supp. 1076; Badger v. Insurance Co., 53 Wis. 286; Brook v. Insurance Co., 24 Ins. L. Jour. 468; Vangendertaelen v. Insurance Co., 82 Wis. 112. There must be a difference arising out of an honest effort to agree. Ball v. Insurance Co., 129 Mo. App. 34. (e) The award is also void for the reason that the umpire acted in "a hasty and most perfunctory manner in performing his duties under the policy." The undisputed evidence is that there had been "quite a fire there." Strome v. Insurance Co., 47 N. Y. Supp. 482. (f) The terms of the policy in regard to the mode of appraisement are essential conditions precedent to any recovery on the ensuing award. Adams v. Insurance

Co., 70 Cal. 198; Hutchinson v. Insurance Co., 153 Mass. 143; Ball v. Insurance Co., 129 Mo. App. 41; McNees v. Insurance Co., 69 Mo. App. 244; Westenhaver v. Insurance Co., 113 Iowa, 726; Gauche v. Insurance Co., 10 Fed. 355. (g) There was no examination or valuation by both appraisers of the goods as to each article or item; this renders the award void. Schmitt v. Insurance Co., 81 N. Y. Supp. 769; Strome v. Assurance Co., 47 N. Y. Supp. 481, affirmed 162 N. Y. 627. (h) The appraisers did not together go over the goods with a view to ascertain their value, as the policy expressly requires. Insurance Co. v. Traub, 83 Md. 524; Loan Assn. v. Manchester Co., 87 N. Y. Supp. 1075. (4) The court erred in holding the cross-bill insufficient, since equity has jurisdiction to vacate an award upon sufficient facts which do not appear on the face of the submission and award. Finley v. Finley, 11 Mo. 624; Cobe v. Lovan, 193 Mo. 252; Hyeronimus v. Allison, 52 Mo. 102; Billmeyer v. Insurance Co., 49 S. E. 903; Redner v. Insurance Co., 92 Minn. 306; Bray v. Staples, 62 S. E. 780.

*S. T. G. Smith,* for respondent, filed argument.

STATEMENT.—This is a suit upon a fire insurance policy, the plaintiff seeking to recover $1660.81, the amount of damage as fixed by an appraisal alleged to have been made in pursuance of the terms of the policy. A trial being had, the cause was submitted to the trial court sitting as a jury, the plaintiff had judgment for the amount sued for and interest, and the defendant has appealed.

The pleadings, so far as we need notice them, were in substance as follows: The petition states that defendant by its policy insured the plaintiff's personal property against fire for $2000, and while the policy was in force the property was damaged

by fire; that the total amount of insurance then on the property was $7400; that after the fire the parties tried to agree upon the amount of the damage but were unable to do so, whereupon each selected an appraiser, and the appraisers selected a competent and disinterested umpire. That thereupon the appraisers tried to agree upon the damage and being unable to do so submitted their differences to the umpire. That thereupon two of the three made an award in writing determining the amount of the damage to be $6145. That the portion of said damage chargeable to defendant under its policy was $1660.81, etc.

The defendant filed an "answer and cross-bill" wherein it admitted the issuance of the policy and its being in force, as alleged, but stated that it contained a provision for ascertaining or estimating the damage, etc., as follows:

"Said ascertainment or estimate shall be made by the insured, and this company, or, if they differ, then by appraisers, as hereinafter provided; and, the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of loss have been received by this company in accordance with the terms of this policy. It shall be optional, however, with this company to take all, or any part, of the articles at such ascertained or appraised value, and also to repair, rebuild or replace the property lost or damaged, with other of like kind and quality within a reasonable time on giving notice, within thirty days after the receipt of the proof herein required, of its intention so to do; but there can be no abandonment to this company of the property described.

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascer-

tained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraiser respectively selected by them and shall bear equally the expenses of the appraisal and umpire." . . .

"No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements."

Defendant also admits that the property was damaged by fire, but avers that the damage did not exceed $1000. Defendant then avers disagreement between the parties as to the amount of damage and the selection of appraisers in pursuance of the provisions of the policy, the plaintiff selecting S. B. Way, and the defendant, H. S. Albrecht, and in that connection making an agreement embodying the following:

"That S. B. Way and H. S. Albrecht shall appraise and estimate, by items and in detail, the sound value of, and the loss and damage to the property . . . stating the sound value and loss and damage separately. These two appraisers shall first select a competent and disinterested umpire, and if the two appraisers fail to agree they shall submit their differences to the umpire and the award in writing of any two shall determine the amount of such sound value and loss and damage, and shall be binding upon both parties to this agreement.

"It is expressly understood that this agreement and appraisement is for the purpose only, of ascertaining and fixing the amount of said sound value and loss and damage to the property hereinafter de-

scribed, and shall not determine, waive, or invalidate any other right or rights of either party to this agreement."

That the two appraisers selected William Gruendler as umpire and then started in to appraise, but before they had examined into much of the property they found themeslves unable to agree as far as they had gone and separated without doing more. That thereafter, without notice to appraiser Albrecht or defendant as to when or where anything further would be done, appraiser Way and umpire Gruendler signed and returned the pretended award spoken of in the petition. That the pretended award was arrived at without the defendant or appraiser Albrecht being present or heard or presenting testimony, or having notice or opportunity to do so; that the appraisers and the umpire never met or heard or considered any matters as a board, or together, or in their official capacity. That the appraisers never submitted their differences to the umpire for his decision and never went together to the place where the damaged property was and never examined the same; that the umpire refused to allow them or either of them to go and examine or estimate the damage with him and never allowed them to submit their differences to him. That appraiser Way and umpire Gruendler arbitrarily and by mere guess work arrived at the amount of the pretended award, without having heard or allowed testimony and without appraising or estimating by items, or in detail, and without investigation or ascertainment. Defendant admits refusing to pay plaintiff any sum whatever, and alleges that after the pretended award was returned it repudiated it and refused to be bound by it. It also alleges that the plaintiff wrongfully moved and disposed of the damaged property contrary to the terms of the policy. Averring then that it had no adequate remedy at law,

defendant prayed that the pretended award be vacated, etc.

Plaintiff demurred to this cross-bill for the reason that it did not state facts sufficient to constitute a cause of action, or to entitle the defendant to equitable relief, which demurrer the trial court sustained.

Thereupon, the defendant filed an answer stating as a defense all the facts and circumstances which it had stated in its "answer and cross-bill," and making the same admissions.

The reply was a denial of "each and every allegation of new matter" in the answer contained.

As to the facts involved on this appeal, it is conceded that plaintiff owned the property, that defendant issued its policy insuring it for $2000, that the property was damaged by fire while the policy was in force, that the policy contained provisions for appraisement, etc., as alleged in defendant's answer, that notice was given to defendant of the loss, that the parties failed to agree as to the amount of the loss, that each selected an appraiser and made an agreement set forth in the answer, that the appraisers chose an umpire, that the umpire and one of the appraisers joined in the award or appraisal mentioned in the petition, and that the defendant repudiated it, refused to be bound by it, and refused to pay plaintiff anything, though plaintiff made and furnished to it proof of loss in proper form. We may add that the appraisers and umpire were experts in the work they were called upon to do as appraisers. We need here set forth only the evidence as far as it shows how the appraisal was made and the conduct of the appraisers and umpire in reference thereto after they had been selected and qualified. In this respect, the evidence on the part of the plaintiff tended to prove that two or three days after the appraisers and umpire had qualified, the two appraisers met by appointment at the place where the damaged property was situated,

each supplied with a list describing the damaged property in detail and by items. They met Mr. Kent of the plaintiff company, and he had plaintiff's engineer go with them and point out the damaged goods as they checked them on their lists. In two or three hours they looked at and examined all of the damaged items or articles. They then agreed that, as they were busy men, each had better make a more detailed and accurate examination at his own convenience. Thereafter Way made three visits to the place alone and examined each item on the list and made an estimate of the sound value and loss as to each item and noted such sound value and loss separately opposite each item on his list. Albrecht also made two visits alone and went over the house with his list, examining everything. Way then informed Albrecht that he was ready to take up the matter of the loss with him and they met by appointment in Albrecht's office and began discussing the loss. After discussing it for some time they finally agreed in substance that they could not agree on anything, and that they would refer the whole matter to the umpire. Albrecht then caused the umpire to come to his office and they told him of their inability to agree and said they would refer the entire matter to him; that he should examine the loss at his convenience and arrive at his findings and notify them when he was ready with the findings and that they would meet him. The lists which each of the appraisers had used were turned over to the umpire. The umpire then made two visits to the damaged property, examining it alone. He spent most of the forenoon on his first visit. He then informed Mr. Way that he was ready to make his findings and asked Way to come to his office, stating he had already notified Albrecht to be there. Way went and found the umpire but not Albrecht. Way waited a considerable time while twice the umpire tried over the telephone to induce Albrecht to some and meet with them. Fin-

ally the umpire advised Way of the amount of his
award and Way agreed to it. They then signed the
award or appraisal mentioned in the petition and an-
swer. This award or appraisal was made upon and
according to a blank form which had been furnished
by the defendant's adjuster. Way took it to Albrecht
and invited him to sign as the umpire and Way had
done. Albrecht declined absolutely to have anything
further to do with it. Features of the evidence are
stated and discussed more in detail in the opinion
proper. According to Albrecht's testimony on behalf
of defendant, the umpire expressly refused to permit
either Way or Albrecht to accompany him when he
examined the property, and expressly refused to look
at Albrecht's appraisement list. Way, on cross-ex-
amination, said he remembered nothing of these
alleged refusals. The umpire was dead at the time
of the trial and his version was not obtained. Albrecht
also testified that when he and Way went together to
examine the damaged property, they just walked
through the building and looked at the goods gener-
ally and not in detail, and agreed to go back together
to make the examination item by item, but had never
done so. That when Way came to him to discuss the
appraisement, Way was in favor of appraising the
loss at eight or ten thousand dollars, while Albrecht
thought and said the damage was only eight or nine
hundred dollars. That when they called in the um-
pire they told him that they could not agree and sug-
gested that all three go and examine the property
together. That he believes the three did agree to
go together, but they never did, the other two having
promised that they would let him know and never hav-
ing done so. The court rejected an offer by the de-
fendant to prove that, after the appraisal had been
made, the plaintiff sold and disposed of the damaged
property so that defendant could not take the property
if it had wished to do so under the terms of the

policy. The defendant saved its exception. It is unnecessary to set forth the declarations of law offered by the defendant. None were asked or given for the plaintiff.

CAULFIELD, J. (after stating the facts).—I. The defendant contends that the petition does not state a cause of action, in that it "counts on the 'award in writing' and yet states no facts or terms of the policy which give effect to the award." Whatever the petition lacked in this respect was fully supplied by allegations of the answer. This rendered it unquestionably sufficient after verdict. [Krum v. Jones, 25 Mo. App. 71.] Defendant appears to realize this, but cites cases to the effect that a plaintiff is not allowed to build up and make out his cause of action upon allegations found in the answer, where he has put them in issue by denials contained in his reply. These cases have no bearing here for the plaintiff has not put itself in that position. Its reply denies only the allegations of "new matter" and new matter includes only facts which avoid the action and which plaintiff is not bound to prove in the first instance in support of it. [State v. Rau, 93 Mo. 126, 5 S. W. 697; Cordner v. Roberts, 58 Mo. App. 440.] As the allegations of the answer which plaintiff would rely upon did not avoid the action but were bound to be proven in the first instance in support of it, they were not such allegations of "new matter" as were denied or put in issue by the reply.

II. There is no just ground for defendant's criticism of the trial court's action in sustaining the demurrer to defendant's cross-bill. It has been held that in an action at law on an award made under a common-law submission to arbitration, the misconduct or mistake of the arbitrators could not be pleaded as a defense. The award could only be set aside in

equity. [See Finley v. Finley, 11 Mo. 624.] We need not decide whether that would be the ruling under our code. This is not an action upon an "award" made under a "submission to arbitration" in the accepted legal sense of those terms. It is not an action upon an award at all. It is an action upon a *contract* in which an appraisal—something less than an award—has been used as conclusive evidence of the amount of damage, but not as the ground of action. [Zallee v. Laclede Mutual Fire & Marine Ins. Co., 44 Mo. 530.] The agreement for an appraisal formed a part of the contract sued upon. It included, by clear and necessary implication, a requirement that the appraisers and umpire should fairly and lawfully conduct themselves in the discharge of their duties and make the appraisal in accordance with the provision and agreement therefor. That requirement was as much a part of the contract sued upon as if it had been written in the body of the instrument. A showing that it had not been complied with was a showing that the contract sued upon had not been fulfilled, and was a matter of defense at law. [Leitch v. Miller, 40 Mo. App. 180.] The trial court adopted that theory in sustaining the demurrer to the cross-bill and in permitting the defendant to set up the same matters by way of defense, and we are of the opinion that its action was correct.

III. The trial court committed no error in excluding testimony to the effect that the plaintiff sold and disposed of the insured property after the appraisal had been completed and signed. By this testimony the defendant would have shown that it was given no opportunity to take the property at its appraised value, as contemplated by the policy. But the defendant repudiated the appraisal and elected not to be bound by it, and by so doing it necessarily waived and lost its option to take the goods at the

appraised value. It could not repudiate the appraisal and still assert and claim rights growing out of and depending upon it. [Model Dry Goods Co. v. Insurance Co., 79 Mo. App. 550.] The excluded evidence was not material to any issue involved in this case.

IV.   Defendant further contends that the appraisal was not made in accordance with law and the contract. The presumption is that it was, that the appraisers and umpire proceeded properly, did everything rightly, and only appraised the proper loss; and the burden of proving the contrary was on the defendant. [Kerr on Insurance, p. 639; Niagara Fire Ins. Co. v. Boon, 76 Ark. 153, 156, 88 S. W. 915.] And the judgment being for the plaintiff, we must assume that the trier of the facts found against defendant's version of the facts and in favor of plaintiff's version, and must accept that finding as conclusive. This disposes of the assertion that the umpire expressly refused to permit either appraiser to accompany him in making his examination and refused to look at or consider the appraisement of either. The fact that such refusals occurred had no support except in Albrecht's testimony for defendant, and the trier of the facts evidently disbelieved it, for in the face of a declaration of law embodying defendant's theory that such refusals would vitiate the appraisal the finding upholds the appraisal. Nor is there any substance to defendant's assertion that the appraisal is void because "the appraisers did not *together* go over the goods with a view to ascertain their value." Defendant cannot mean by this that they did not go together *at all* to view the damaged property because it is conceded that they did go together once; but it does apparently contend that the appraisers should have stayed together with the goods long enough for each to finally decide upon the value to be placed upon each article and the amount of the damage thereto and

that it was not sufficient or proper for them afterwards. to go separately to complete the examination more in detail. The contract does not so provide. It provides that "the appraisers together shall then (after choosing an umpire) *estimate and appraise the loss.*" This did not require them at all hazards to view the damaged property together nor forbid them viewing it separately, nor were they so required or forbidden by law. Appraisers such as these, chosen under the circumstances they were chosen, were not to be governed in their proceedings by the same rules applicable to technical arbitrators and court proceedings, but were to proceed according to the dictates of business sense, prudence and judgment. [Kerr on Insurance, p. 639.] And we are satisfied, as the trier of the facts very evidently was, that they so acted, in first going together to look at each damaged article generally and then going separately to examine them more carefully and in detail. Defendant could not possibly have been injured by such a proceeding.

Defendant also asserts that there was no valuation by both appraisers of the goods as to each article or item. We are of the opinion that the evidence justifies the inference that there was such a valuation. But that question of fact is not left for us to decide. The finding of the trier of facts concludes us in that respect also. And so it is with defendant's complaint that the two appraisers did not get together and make an honest effort to agree as to what the loss and sound value was. The trial court has found against the defendant in this respect and we are bound by such finding. But we would not be inclined to disturb the trial court's finding even if we had the right so to do. The evidence discloses that after the two appraisers had been over the damaged property together, looking at it article by article, each with a list of the items in his hand, and after each had visited and examined the property again and again, alone, Way advised

Albrecht that he was ready to take up the matter of the loss with him and they made an appointment to meet. Pursuant to such appointment, Way met Albrecht at the latter's office and they discussed the loss together. After discussing the matter for a while they finally agreed that they could not agree on "anything." Such is the effect of Way's testimony. Defendant's witness Albrecht testified on his direct examination that he told the umpire when he came that the appraisers couldn't "agree." Being asked by counsel for defendant what he meant by that he answered, "Well, Mr. Way and I, we were just differing about the matter, he thinking I didn't have enough and I thought he hadn't made a fair estimate, and Mr. Way said the best thing to do is to call the third man in, and I agreed to that." It seems to us that this was sufficient to justify the trial court in finding that the appraisers could not agree; at least we can discover nothing that would justify us in holding that the contrary had been established conclusively as matter of law in favor of the defendant, who had the burden of proof.

Next, the defendant asserts that the appraisers did not submit their "differences" to the umpire. The evidence on behalf of the plaintiff in that respect which the trial court had a right to believe, and did believe, is to the effect that when the appraisers found that they could not agree on "anything" they called in the umpire and told him so and also told him that they would refer the entire matter to him, and that he should examine the loss at his convenience and arrive at his findings and notify them when he was ready to make his findings, and that they would then meet him. The appraisers at that time turned over to the umpire the lists which they had used in making their several valuations and estimates and which contained an itemized statement of all the damaged goods. Way's list, at least, contained the notation of his esti-

mate as to valuation and damage opposite each item and we may assume in the absence of evidence to the contrary that Albrecht's list contained the same, for otherwise there would have been no purpose in his turning the list over to the umpire, and Albrecht would not have testified as he did, as follows: "Q. State whether or not you ever submitted to Mr. Gruendler at any time, article by article, or otherwise, what you thought the loss was? A. I did. Q. When? A. Offered to show him the list, but he said he didn't want to see it." But it is immaterial why the trier of the facts found that the appraisers and umpire had acted properly, whether because the defendant had failed to prove the contrary, as was incumbent upon it to do, or because the plaintiff's evidence convinced him; in either event we are concluded by his finding, there being no indication that he acted arbitrarily, under the influence of passion or prejudice. [Pierce Loan Co. v. Killian, 153 Mo. App. 106, 132 S. W. 280.]

Defendant next isolates the statement of the witness Way that the two appraisers "agreed that the umpire should go and view the loss alone, take our lists, draw his own conclusions, and render his own award," and then lays great stress upon it as if it indicated that the two appraisers had abandoned their functions and allowed the umpire to go his way alone. We are satisfied from reading the entire testimony that neither the umpire nor the appraisers had any such intention and that they did not proceed as if they had. After so "agreeing" they called in the umpire and told him that they would refer the entire matter to him and that he should examine the loss, etc., "and notify us when he was ready to make his findings, and that we would then meet him." Afterwards, having made his examination and arrived at his findings, the umpire did notify the appraisers, and Way went and signed the award, but not, according to his uncontradicted testimony, until he had

"agreed" to it. He then testifies that he then went down to Mr. Albrecht's office and told him what they had done at the umpire's office; that "we had arrived at the findings," etc. Albrecht was "put out" that the award had been made and declined to have anything further to do with it. It is evident that the sole right of decision was not vested solely in the umpire, but each appraiser reserved the right to sign or refuse to sign the award according to whether it suited him. The umpire so understood and acted upon the understanding, for he tried to get the three to arrive at the findings together; Way did, because he did not sign until he had "agreed" to the award, and Albrecht would not sign at all, being "put out" because they had proceeded without him. It is apparent that the appraisal represented the honest judgment of the umpire and one of the appraisers, and that is all that is necessary under the contract. Nor do we believe that the conduct of the umpire can be justly criticised. There is no basis whatever for the charge that he acted in "a hasty and perfunctory manner in performing his duties under the policy." He took the lists from the appraisers which embodied their views in detail and with their consent went alone and examined the damaged property. And we are satisfied that this was not a case where the umpire was required or expected to hear testimony. It was rather one where three experts were chosen because of their peculiar knowledge to view and value the property and estimate the damage, conducting their proceedings in a fair and business-like, but informal, manner. They were selected to make an appraisement, not to hear evidence. The umpire and appraisers were evidently of that opinion, for none of them suggested the necessity of hearing testimony. Nor was it necessary under the circumstances to give notice to the parties themselves or give them opportunity to be heard. [Vincent v. German Ins. Co., 120

Iowa, 272, 278; Townsend v. Greenwich Ins. Co., 83 N. Y. Supp. 909, 911; Ostr. on Fire Ins. (2 Ed.), sec. 261.] It was sufficient that the appraisers selected by them had notice of the meeting in the umpire's office and were advised of and acquiesced in the prior proceedings. [Townsend v. Greenwich Ins. Co., 83 N. Y. Supp. 909.] Nor could the award signed by the two be vitiated by the failure of the defendant's appraiser to attend at the umpire's office when notified to do so. [Kerr on Ins., p. 643; Cooley's Briefs, p. 3644.]

The judgment is affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.