SECURITY PRINTING COMPANY, a corporation, Appellant, v. WESTCHESTER FIRE INSURANCE COMPANY OF NEW YORK CITY, a corporation, Respondent.

St. Louis Court of Appeals.    Opinion Filed May 4, 1920.

1. **INSURANCE: Fire Insurance: Appraisals: Appraisal Not an Arbitration and Award.** The submission to appraisers under an agreement for submission to appraisers, and the instrument signed by one appraiser and the umpire to appraise and estimate by items and in detail the sound value of, and the loss and damage to, the property destroyed or damaged by fire, termed an "award," did not constitute an arbitration and award either under the statutes or at common law, and if valid and binding, it served merely to fix the amount of the loss and damage.

2. ———: ———: ———: **Fixing Amount of Loss: Must Conform to Agreement.** Though a fire insurance policy contained a provision purporting to make it mandatory upon the insured to submit the matter to appraisers in the event of disagreement as to the amount of loss, this provision was not binding on insured under *section* 868, Revised Statutes 1909, and insurer having pleaded that such agreement was made, and that the award was made in compliance therewith, the burden of proof rested upon insurer to establish that the appraisement pleaded was made in substantial compliance with the terms of the agreement, in order for insurer to avail itself of such appraisement as fixing the loss and damage.

3. ———: ———: ———: ———: **Appraisement of Loss Not Made According to Agreement: Void.** Where an agreement for submission to appraisement provided that the appraisers should appraise and estimate by items and in detail the sound value of, and the loss and damage to, the property destroyed or damaged by the fire, as specified in the agreement and the policy, stating the sound value and loss and damage separately, the signing of a so-called "award" by one appraiser and the umpire is not in any sense an appraisement by items and in detail of the property specified, or property destroyed or damaged, contained in the basement of insured's building, such being shown merely by stating in the aggregate the total sound value of all the property in the basement and the aggregate loss and damage to the various classes of property specified in the agreement and policy, and *held*, that as an appraisement under the agreement for submission to appraisers, it was clearly void.

4. ———: ———: ———: **Appraisement Agreement Pleaded: Evidence: Failure to Make Prima-facie Showing.** Where insurer pleaded an agreement by submission to appraisers, and that an appraisement or award had been made in accordance with the terms thereof, it devolved upon the insurer to establish, prima facie, an appraisement made in compliance with the agreement between the parties; such prima-facie showing, if any, being subject to be rebutted by the insured, though insured could not have attacked the appraisement for fraud without having pleaded it, and *held* that insurer made no prima-facie showing that the appraisement pleaded and offered in evidence was made in accordance with the agreement between the parties.

Appeal from the Circuit Court of the City of St. Louis.—
 *Hon. Benjamin J. Klene*, Judge.

REVERSED AND REMANDED.

*Cobbs & Logan* for appellant.

(1) The directed verdict was wrong as to the interest allowed. (2) The alleged appraisement is not an award. It is only evidence and must be established as other facts. Young v. Penn. Fire Ins. Co., 269 Mo. 1, 187 S. W. 856; Zaller v. Laclede Mut. F. & M. Ins. Co., 44 Mo. 530, 432; Kent-Purdy Paint Co. v. Aetna Ins. Co., 165 Mo. App. 30, 43; Stolz v. Miller, 176 Mo. App. 352; Adams v. N. Y. Bowery F. Ins. Co., 85 Iowa, 6, 10; Pierce's Loan Co. v. Netherlands F. & L. Ins. Co., 200 S. W. 120, 122. (3) The burden is on the one alleging an appraisement to prove that it was made in accordance with the agreement. (4) Under its general denial, plaintiff should have been allowed to rebut evidence that the alleged appraisement was regularly made. It was only a prima-facie defense. 5 C. J., sec. 583, page 221; Fassett v. Fassett, 41 Mo. 516; Woodbury v. Northy, 3 Me. 85; Patton v. Tate, 145 Mo. App. 273. (5) The appraisement contract is void under our statute. Sec. 868, R. S. 1909; Young v. Penn. Fire Ins. Co., — Mo. —, 187 S. W. 856; Dworkin v. Caledonian Ins. Co., — Mo. App. —, 191 S. W. 1092; Stolz v. Miller, 176 Mo. App. 352, 370; Prather v. Ins. Co., 188 Mo. App. 653, 657; Joyce v. St. Paul F. &

M. Ins. Co., 194 S. W. 745. (6) The alleged appraisement is void on its face and should not have been admitted in evidence. 4 Cooley's Briefs on Insurance, p. 3646; Sauthof v. Amer. Cent. Ins. Co., 34 R. I. 324, 82 Atlantic R. 441; Riddell v. Rochester German Ins. Co. of N. Y., 36 R. I. 240, 89 Atlantic R. 833; Coffin v. Ins. Co., 142 Mo. App. 295; Continental Ins. Co. v. Garrett, 125 Fed. R. 589; Adams v. N. Y. Bowery F. Ins. Co., 85 Iowa, 6, 10 and 12; Mason v. Fire Ass'n of Phila., — S. D. —, 122 N. W. 423; Bartlett v. Bartlett, — Wis. —, 93 N. W. 478; Baker v. Phoenix A. Co. of London, 57 Mo. App. 560; Joyce v. St. Paul F. & M. Ins. Co., 194 S. W. 745. (7) The evidence offered was not sufficient to establish a valid appraisement, and even if properly admitted, the question of its validity should have been submitted to the jury. Pierce's Loan Co. v. Netherlands F. & L. Ins. Co. (Mo.), 200 S. W. 120, 122. (8) The alleged appraisement is not binding upon plaintiff because not served on it and not filed. (9) There is a variance between the pleading and the proof of the appraisement agreement.

*Leahy & Saunders* for respondent.

(1) The agreement entered into by the parties, after the loss, to submit the amount of loss to arbitration, is not affected by the provisions of section 868, Revised Statutes of Missouri 1909, which section merely nullifies a provision of the insurance policy making a submission to arbitration mandatory in the event of disagreement as to loss. Young v. Pennsylvania Fire Insurance Company, 269 Mo. 1, 15; Non Royalty Shoe Company v. Phoenix Insurance Company, 210 S. W. 37, 42; Paris v. Hamburg-Bremen Fire Insurance Co., 204 Mass. 90, 93. (2) Such appraisement by arbitration voluntarily made after the fire, is binding upon both parties as to the amount of loss unless fraudulently secured. Young v. Pennsylvania Fire Insurance Company, supra; Zallee v. Insurance Company, 44 Mo. 530; Non Royalty Shoe Company v. Phoenix Fire Insurance Company, 210 S.

W. 37; Boutross v. Fire Insurance Company, 100 Kan. 574; Tucker v. Allen, 47 Mo. 488; Sweeney v. Vaudry, 2 Mo. App. 552; Newman v. Lebaume, 9 Mo. 30; Hamilton v. Liverpool & L. & G. Insurance Company, 136 U. S. 242; 7 Cooley's Brief on Insurance, Supplement, page 1505, section 3631; Levin v. Northwestern Insurance Company, 185 Fed. 981, 982; Perry v. Insurance Company, 137 N. C. 402, 406; Union Marine Insurance Company v. Charlies Transfer Company, 186 Ala. 443, 450; Eberhart v. Federal Insurance Company, 14 Ga. App. 340, 344; Commercial Union Assurance Company v. Dolzell, 210 Fed. 605, 608-9; Brillmeyer v. Insurance Company, 57 W. Va. 42, 43; Solem v. Connecticut Fire Insurance Company, 41 Mont. 351, 353; Mayer v. Home Insurance Company, 108 N. Y. Supp. 711, 713; Steinberg v. Boston Insurance Company, 144 App. Div. (N. Y.) 110, 112. (3) The burden of proof is upon the appellant to show that the award was vitiated on account of fraud. Boutross v. Palatine Insurance Company, 100 Kan. 574, 577. (4) Appellant was not entitled to introduce in evidence matters to invalidate the award made under the contract for submission to appraisers under a general denial. St. Louis Agr'l & Mech. Ass'n v. Delano, 108 Mo. 217, 220; Claflin v. Sommers, 39 Mo. App. 419, 421; Revised Statutes of Mo. 1909, section 1812; State ex rel. Cardwell v. Stuart, 11 Mo. App. 478, 496; Boutross v. Ins. Co., 100 Kan. 574; and authorities generally, under Point 2, supra.

ALLEN, J.—This is an action on a policy of fire insurance, issued to the plaintiff corporation by the defendant insurance company on December 31, 1913, covering the contents of a building used by plaintiff in the conduct of its printing business in the city of St. Louis. The policy in suit insured plaintiff against loss to said property by fire in a sum not exceeding $2000. It was one of thirty-nine fire policies issued to plaintiff by various insurance companies upon said property; the total insurance thereon aggregating the maximum

sum of $100,000. By the terms of the policy sued upon the defendant was liable only for its *pro rata* share of any loss against which plaintiff was thus insured by these thirty-nine policies.

This policy describes the property insured, located in the said building, as follows:

"Equipment and apparatus and improvements, including motors, presses, machines. . . . Furniture, fixtures, tools, implements, office outfit. . . . Monotype machines and matrices. . . . Stock in trade and other merchandise, materials and supplies. . . . Type foundry furnishings, supplies and materials, including type, composition, electrotypes, stereotypes, wood cuts and standing forms, including composition on electrotypes, stereotypes and standing forms," etc.

The policy contains the following provision:

"In the event of disagreement as to the amount of loss and the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and distinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraiser respectively selected by them and shall bear equally the expenses of the appraisal and umpire."

While the policy was in force, to-wit, on March 18, 1914, a fire occured in the basement of said building, destroying a part of the property covered by the policy, and damaging other portions thereof. Subsequent to the fire, and after notice to defendant of the loss, plaintiff caused to be prepared detailed, itemized inventories or statements of the loss and damages claimed to have been sustained by it by reason of the fire; which inventories were furnished to adjusters representing defendant and the other insurance companies interested,

These inventories were prepared by men experienced in such work, and it is said that two or three weeks were consumed in their preparation. They were introduced in evidence below, as plaintiff's Exhibits B, C, D, E, F, and G, together with proof of their correctness. They purport to show, in itemized detail, the loss, total and partial, on "standing forms" (i. e. forms of type which had been used for printing and which had been stored for probable future use) and on electrotypes; and total loss on "blank stock" (i. e. unused paper stock) and on "printed stock." At the trial plaintiff adduced evidence of other items of loss sustained. The loss thus appearing by plaintiff's evidence to have been sustained by it may be summarized as follows:

"Total loss on standing forms, destroyed (Exhibit B)............... : .............$ 9345.31
"Partial loss on standing forms, damaged (Exhibit C) ................ ......    9405.97
"Partial loss on electrotypes, damaged (Exhibit D)............. .................    2117.66
"Total loss on electrotypes destroyed (Exhibit E)...................... ...........    346.65
"Total loss on blank stock destroyed (Exhibit F)..        ............. ' .    461.49
"Total loss on printed stock destroyed (Exhibit G)............... ................    2491.78
                         Amt. Forward....24168.86
"Cost of cleaning up debris and protecting property after fire............... $ 855.06
"Cost of repairing electric wiring. :    100.00
"Damage to racks on shelves........    50.00

"Total........... . ........... $ 25173.92"

After these inventories had been prepared and submitted to the adjusters, the latter called attention to the provisions of the policy, supra, purporting to require an appraisement, and demanded that such appraisement be made. And thereupon plaintiff—believing, it is said, this provision of the policy to be valid and

binding—signed an "agreement for submission to appraisers" which was also signed by said adjusters, representing defendant and other insurance companies. The provisions of this agreement here pertinent are as follows:

"This agreement . . . Witnesseth, that Joseph N. Weyers and Charles N. Dawson shall appraise and estimate, *by items and in detail,* the sound value of, and the loss and damage to the property destroyed or damaged by the fire of March 18, 1914, as specified below, stating the sound value and loss and damage separately. These two appraisers shall first select a competent and disinterested umpire, and if the two appraisers fail to agree they shall submit their differences to the umpire, and the award in writing of any two shall determine the amount of such sound value and loss and damage and shall be binding upon both parties to this agreement." (Italics ours.)

The property to be appraised was "specified" in this agreement by embodying therein the description of such property, supra, as contained in the policy.

Of the two appraisers named in this agreement, Weyers was selected by the plaintiff and Dawson by the insurance companies. The appraisers duly qualified, and duly selected one Wm. F. Court to act as umpire to settle matters of difference, if any, that might arise between them.

It appears that in proceeding to appraise the loss the appraisers were unable to agree as to certain matters, and they accordingly submitted their differences to the umpire. Dawson and the umpire ultimately joined in signing an instrument headed "Award," in which Weyers, the appraiser appointed by plaintiff, refused to join. This instrument is as follows:

"To the Parties in Interest:

"We have carefully examined the premises and remains of the property herein before specified, in accordance with the foregoing appointment, and have

determined the sound value and loss and damage to be as follows:

|  | Sound Value. | Loss and Damage. |
|---|---|---|
| 1st Item—Basement .... | $41,297.37 | $13,434.98 |
| 2nd Item—Office and stock room, 1st floor | 4,409.00 | none |
| 3d Item—Bindery, 2nd floor | 5,114.25 | none |
| 4th Item—Press room, 3d floor . | 11,213.00 | none |
| Amount forward ........ | 62,033.62 | 13,434.98. |
| 5th Item—Composing room, 4th floor ...... | 53,560.75 | none |
| Total sound value and total loss and damage ...... | $115,594.37 | $13,434.98 " |

Thereafter plaintiff, ignoring this appraisal, instituted this action.

The petition pleads the legal effect of the policy in suit, alleging also the existence of the other policies mentioned above, and alleges plaintiff's entire loss and damage to the property insured, as the result of the fire, to be $25,173.92, and that the defendant is liable for its *pro rata* share of such loss and damage, to-wit, $503.48. The prayer is for judgement for said $503.48, with interest, and also for damages and attorneys fees as for vexatious refusal of defendant to pay its proportion of the loss.

The amended answer upon which the cause was tried below contains first a general denial. It then sets out a table showing the names of the various insurance companies which had issued the said thirty-nine policies covering plaintiff's said property, the number of each policy, and the amount of the insurance therein provided, and the respective amounts

alleged to be 'due from each company under the "Award" subsequently pleaded in the answer; the amount due from defendant to plaintiff being thus alleged to be $268.70. After alleging that each of the thirty-nine policies mentioned contained the provision for an appraisal of the loss contained in the policy in suit, quoted above, it is alleged that on or about March 18, 1914, a fire occurred in plaintiff's said premises, which destroyed or damaged some of the property specified in these policies; that the said insurance companies and plaintiff disagreed as to the amount of such loss, and, in accordance with the provisions of the policies, the companies and plaintiff, on April 29, 1914, "entered into a written agreement in accordance with the said provisions of the said policies above quoted" to the effect that said Weyers, selected by plaintiff, and Dawson, selected by the insurance companies," should appraise and estimate the sound value and the loss and damage of the property destroyed or damaged by said fire, . . . stating the sound value and the loss and damage of the property destroyed or damaged by said fire, . . . stating the sound value and the loss and damage separately;" and that the appraisers should select a competent and disinsterested umpire, and if they should fail to agree, they should submit their differences to such umpire, and that the award in writing "of any two of said appraisers and umpire should determine the amount of such sound value and loss and damage, and should be binding upon both the said companies and the said plaintiff." Further allegations are made as to the proceedings of the appraisers and umpire, as we have stated in substance above; and it is alleged that said Dawson and said umpire, Court, made and signed an award in writing, "in accordance with the said terms of the said policies and of the said agreement." The so-called award, as shown above, placing the loss and damage at $13,434.98, is set out in the answer.

Security Printing Co. v. Fire Ins. Co.

And the answer further avers that by such award the demand of plaintiff against the said insurance companies was fixed and liquidated, and the amount to be paid plaintiff by each thereof was determined; that after the filing of the award the companies "tendered settlement" to plaintiff on the basis of such award, which plaintiff declined to accept. And it is averred that prior to the filing of this suit defendant tendered to plaintiff its proportional amount of its said award, to-wit, $268.70; and that the amount due plaintiff from defendant should not exceed such sum. Other allegations of the answer need not be noticed.

The reply is a general denial.

The cause was tried before the court and a jury, and at the close of all the evidence in the case the court peremptorily directed a verdict for plaintiff in the sum of $268.70, with interest from October 2, 1914 (evidently meant to be the date of the institution of the suit, to-wit, October 29, 1914) aggregating in all $307.25. From a judgment entered upon this verdict the plaintiff prosecutes the appeal before us.

It is unnecessary to follow in detail the assignments of error made by appellant's learned counsel. The trial court, in passing upon objections made by defendant's counsel to remarks of plaintiff's counsel in his opening statement to the jury, ruled that the appraisement pleaded by defendant was "a common law adjustment or arbitration." And the court not only admitted in evidence this so-called award, but throughout the trial, by numerous rulings, held that plaintiff was not entitled to "attack the appraisement," and was not permitted to show that such appraisement was not made under and in accordance with the terms of the written agreement for submission to appraisers. An excerpt from the record will serve to show, in a general way, the theory pursued by the trial court—though inconsistency appears in the rulings made. During plaintiff's cross-examination of defendant's witness Dawson, as to the proceedings of the appraisers, the following occurred:

"Mr. Sanders (defendant's counsel): I would like to inquire as to the purpose of this examination.

"Mr. Cobbs (plaintiff's counsel): The purpose is in order to prove that they did not appraise this property in accordance with the terms of the contract.

"Mr. Saunders: Then they are not entitled to show that.

"The Court: For that purpose the objection will be sustained. You can't attack the appraisement.

. . . .

"Mr. Cobbs: What I am trying to do is to prove that these appraisers did not appraise the property in accordance with the terms of the contract; that they couldn't have done it in the time they claim to have given to it; that they didn't do it; that their appraisement isn't made in accordance with the terms of the contract; that it isn't in any sense in compliance with the provisions of that contract; that they haven't complied with the provisions of the contract, and it rests on them to show that they have.

"The court: I concede that; but when they have made out a prima-facie case on that under the issues as here framed, my view of it is that that is an end of it."

The court's rulings appear to have been influenced, in part, by the fact that the reply was a general denial. But obviously, under the pleadings as they stood, the burden was upon defendant to show that the appraisal, or so-called award, was made in compliance, or at least substantial compliance, with the written agreement entered into between the parties providing for a submission to appraisers.

The submission to appraisers under this agreement and the instrument signed by one appraiser and the umpire, termed an award, did not constitute an arbitration and award either under our statutes or at common law. [Young v. Insurance Company, 269 Mo. 1, 187 S. W. 856; Zallee v. Insurance Co., 44 Mo. 530; Kent & Purdy Paint Co. v. Insurance Co., 165 Mo. App.

80, 146 S. W. 78.] The instrument termed "award" is something less than an award, to-wit, an appraisal. If valid and binding, it served merely to fix the amount of the loss and damage. (See authorities supra.)

But in order to be valid and binding upon the parties, it was necessary that this appraisal be had in at least substantial compliance with the terms of the written contract, excuted by plaintff and the various insurance companies interested, subsequent to the fire, to-wit, on April 29, 1914. Though the policy contained a provision purporting to make it mandatory upon plaintiff to sumbit.the matter to appraisers in the event of disagreement as to the amount of the loss, this provision was not binding on plaintiff. [See Section 868, Revised Statutes 1909.] That is to say, by virtue of the statutory enactment just cited, this clause in the contract of insurance was rendered ineffectual to compel plaintiff to submit to an appraisement, as a condition precedent to its right to recover upon the policy. [See Young v. Insurance Co., supra, l. c. 15.] But the parties entered into the written agreement of April 29, 1914, providing for the submission to appraisers of the matter of the loss and damages sustained. Defendant pleaded that such agreement was made, and that the "award" was made in compliance therewith. The reply put this matter in issue. And consequently, upon the pleadings, the burden rested upon defendant to sustain the said allegations of the answer and to establish that the appraisement pleaded was made in substantial compliance with the terms of this agreement, in order for defendant to avail itself of. such appraisement as fixing the loss and damage. [See Fassett v. Fassett, 41 Mo. 516.]

When this agreement of April 29, 1914, came into evidence it showed upon its face, as appears above, that it was thereby agreed that the appraisers should appraise and estimate *by items and in detail* the sound value of, and the loss and damages to, the property destroyed or damaged by the fire, *as specified in the agreement* and the policy, stating the sound value and

204 M. A.—26

loss and damage separately. The so-called award, signed by one appraiser and the umpire, pleaded in defendant's answer and upon which defendant relies, is, we think, obviously not an appraisement in accordance with the terms of the said contract. It does not purport to be in any sense an appraisement, "by items and in detail," of the property "specified." On the contrary the sound value of, and loss and damage to the property destroyed or damaged, contained in the basement of plaintiff's said building, are shown merely by stating in the aggregate the total sound value of all the property in the basement, and the aggregate loss and damage thereto—taking the word "basement" as used in the "award" as meaning the said property of plaintiff contained in the basement. It does not even show the loss of or damage to the various classes of property specified in the agreement and policy. As an appraisement purporting to have been made under the said agreement, we think that it was clearly void.

Respondent's learned counsel refers to the language of the opinion in Young v. Insurance Co., supra, holding that the appraisement there under consideration was valid and binding, as to amount, "if such 'appraisement was not fraudulently procured.'" And it is argued that plaintiff cannot attack the appraisement here under consideration except for fraud, and that plaintiff had not pleaded that such appraisement was fraudulently procured. But we regard it as quiet clear that what was said in the Young case in this connection has no application to the situation here presented. In the Young case the appraisement was valid and binding, if not fraudulently procured, because of the fact that the contract of insurance there involved antedated the said act of 1909, supra, and the provisions of such contract made it obligatory upon the insured to submit to the appraisement. Such is not here the case. The contract of insurance here involved was executed on December 30, 1913, and consequently was governed by the provisions of the said Act of 1909. Therefore

plaintiff could not have been compelled to submit the matter of its loss and damage to appraisers. Plaintiff voluntarily entered into an agreement for an appraisement, and it may well be that an appraisement made in accordance with the terms of such agreement, and not fraudulently procured, would be valid and binding upon plaintiff as fixing the amount of its loss and damage. However, when defendant pleaded such agreement, and pleaded that an appraisement or "award" had been made in accordance with the terms thereof, it obviously devolved upon defendant to establish, prima facie, an appraisement made in compliance with the agreement between the parties, such prima facie showing, if any, being subject to be rebutted by plaintiff though plaintiff could not have attacked the appraisement for fraud without having pleaded it. We are of the opinion, however, that the defendant made no prima-facie showing that the appraisement pleaded and offered in evidence was made in accordance with the said agreement between the parties.

Much is said in respondent's brief regarding the evidence adduced touching the acts of the appraisers and the umpire. It is true that the evidence shows that the appraisers, in viewing the property, had with them the elaborate inventories mentioned above, which, as said, were prepared in great detail, containing hundreds of items. And there is some evidence that the items thereof were "checked off" in the course of the examination of the property. But there is nothing to show an appraisement by items, in any sense; and plaintiff was denied the right to go into this matter.

The "type forms" claimed to have been totally lost, of which plaintiff's Exhibit "B" contains 364 items, were, it is said, upon a heap on the floor of the basement, while damaged forms and electrotypes were in shelves or racks. The latter were not removed from the racks by the appraisers. The number of broken and destroyed forms in this heap upon the floor was arrived at, in making up the inventories,

by reference to "proofs" kept by plaintiff showing standing forms on hand at the time of the fire. It is argued for respondent that it would be absurd to require the appraisers to appraise every piece of type or metal contained in this mass of broken forms upon the floor. We do not say that this would be necessary, for such question is not in any way before us. It is obvious that the appraisement of the properties specified in the policy and in the agreement for submission to appraisement consisting of property of various classes or kinds, was not appraised in substantial compliance with the terms of the agreement entered into between the parties; and the instrument termed "award" upon which defendant relies, clearly, we think, upon its face, shows no attempt to comply with the terms of such agreement.

In this view, the defense based upon an alleged valid and binding appraisement, fixing the amount of the loss and damage, totally failed; and the trial court should have so declared as a matter of law.

It follows that the judgment should be reversed and the cause remanded for further proceedings not inconsistent with the views expressed above. It is so ordered. *Reynolds, P. J.,* and *Becker, J.,* concur.